## Reynolds Estate.

Argued May 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George W. Keitel,* Deputy Attorney General, with him *Joseph Marzzacco* and *T. McKeen Chidsey,* Attorney General, for appellant.

*S. Augustus Davis,* with him *Walter L. Hill, Jr.,* and *O'Malley, Harris, Harris & Warren,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, July 6, 1948:

This is an appeal by the Commonwealth from a decree of an orphans' court sustaining an appraisement and assessment of transfer inheritance tax upon a decedent's estate.

David M. Reynolds, the testator, died March 17, 1944. By the 18th item of his will he directed that all bequests be freed from payment of inheritance taxes. The testator bequeathed legacies in the amount of $16,370, upon which an inheritance tax of 10% is conceded to be due. The residue of his estate, appraised as of the date of the death of testator at $80,713.18, was devised and bequeathed to trustees to pay the income therefrom to his widow for life. The trustees were given the discretion to pay the widow any part or the whole of the corpus for her maintenance and support. After the decease of the widow, the *unexpended* corpus was devised and bequeathed to collateral relatives. The widow died June 6, 1945—one year, two months and twenty days after her husband—without having consumed any portion of the corpus.

On December 14, 1944, the executor of the testator paid to the register of wills the sum of $3,251.26 *"on account"* of the transfer inheritance tax. It is stated in the tax receipt that the payment was on an appraisement then *"pending."*

Thereafter, on January 29, 1945, the register of wills made the appraisement. The gross value of the assets was appraised at $107,977.00 with allowable deductions of $10,893.82, leaving an estate of the clear value of $97,083.18. The legacies, taxable at 10%, amounted to $16,370. The residue of the estate upon which the widow was given a life estate, with right to consume, was appraised at $80,713.18. Whatever passed to the widow, whether income or principal, was taxable

at 2%. That portion of residue which remained unconsumed at the death of the widow passed to collaterals and was taxable at 10%. Until the widow's death it was impossible to ascertain what portion of the principal she had consumed (taxable at 2%) and what portion of the residue passed to collaterals (taxable at 10%). The register thereupon made the following suspension notation on his appraisement: *"Reservation is hereby made to the Commonwealth of Pennsylvania of the right to appropriately tax any distribution made upon the death of the Life Tenant, Ruth C. Reynolds, to the collateral heirs named in Article 17 of the decedent's will."*

Upon the death of the life tenant, the register made a reappraisement and assessment. He appraised the value of the life estate at $27,390.02 and assessed tax thereon at 2%, which amounted to $547.80. The value of the widow's life estate was computed on a life expectancy of 6.787 years calculated from the date of the death of testator; this estimate was based upon the mortality tables.

The register re-appraised the value of the assets constituting the remainder estate as of June 6, 1945, *the date of the death of the life tenant.* The re-appraised value was $86,594.87 (which superseded the appraisement of $80,713.18 *as of the date of the death of testator*).

A transfer inheritance tax was then assessed as follows:

| | |
|---|---:|
| 2% upon the value of the life estate of the widow appraised at $27,390.02 ....... | $547.80 |
| 10% on $16,370 specific legacies ........ | 1,637.00 |
| 10% upon the remainder re-appraised at $86,594.87 ...................... | 8,659.49 |
| Total tax ........................ | $10,844.29 |
| Less amount paid *on account* 12-14-44 .. | 3,251.26 |
| Tax assessed ...................... | $7,593.03 |

to which was added penalty of $987.09; claim of interest at 6% to date of payment was noted.

Exceptions to the assessment were taken by the executor which were sustained on appeal in the orphans' court. The Commonwealth then appealed to this Court.

The court below, in sustaining the appeal, ruled that the *entire estate* had been appraised, and the tax thereon assessed and paid, and that consequently the matter had been concluded, which prevented a subsequent re-appraisement and assessment. With this conclusion we are unable to agree.

Rates of transfer inheritance tax, the property taxable, allowable deductions and procedure for assessment and collection of the tax are prescribed by the Act of June 20, 1919, P. L. 521 and its supplements, 72 PS, 2301 et seq. For a discussion of the procedure under the Act see *Borie's Estate,* 13 D. & C. 355, which this Court has approved: *Commonwealth v. Chamberlin Estate,* 346 Pa. 472, 31 A. 2d 93; *Haid Estate,* 347 Pa. 159, 32 A. 2d 25; *Darsie Estate,* 354 Pa. 540, 47 A. 2d 815.

When an appraisement and assessment purport to be a final determination of the value of the *property appraised* and the *rate assessable,* the assessment and appraisement are conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment had been made either as to the *value* of an asset or the *rate* of tax: *Heberton Estate,* 351 Pa. 564, 41 A. 2d 654; *Darsie Estate,* supra. But this Court has repeatedly decided that the register may *suspend* any item in the appraisement or assessment pending its final determination: *Commonwealth v. Chamberlin Estate,* supra; *Haid Estate,* supra. Where, as in this case, the register is unable to ascertain until the death of the life tenant what portion of the estate is subject to a 2% tax or to a 10% tax, his express reservation of the ". . . *right to appropriately tax any distribution made upon the death*

*of the Life Tenant . . .*" clearly and unequivocally preserved his authority to make a re-appraisement and assessment upon the death of the life tenant.

According to the official receipt dated December 14, 1944, the sum of $3,251.26 was paid *"on account"* of a *"pending"* appraisement and assessment. That appraisement was later filed on *January 29, 1945.* Included in the appraisement is the reservation above quoted. Under such circumstances, stamping on the assessment "Paid, 12-14-44, $3,251.26 in full" does not contradict the record that such sum was paid *on account* and that a re-appraisement and assessment would be made upon the death of the life tenant; the stamped record merely states that *partial* assessment had been paid in full.

The life tenant died before the appraisement of her life interest. She had, in fact, only enjoyed the income from the residue for a little over one year. Nevertheless, the value of the life estate must be appraised *as of the date of the death of the testator measured by the number of years of the probable duration of her life as determined by the mortality tables,* and *not* by the period of time during which the life estate actually endured: *Rowell's Estate,* 315 Pa. 181, 184 et seq., 173 A. 634, cited with approval in *Commonwealth v. Stewart,* 338 Pa. 9, 19, 12 A. 2d 444.

While the value of *life estate* is fixed commencing with the *date of the death* of testator: *Rowell's Estate,* supra, the value of *remainders* is determined as of the time the *right to possession* accrues, i. e., at the death of the life tenant: *Jewell's Estate,* 235 Pa. 119, 83 A. 610; *Simpson's Estate,* 332 Pa. 115, 2 A. 2d 851, unless the tax on the entire estate is paid under section 3 of the Act of 1919, supra: *Heberton Estate,* supra, p. 568.

The register has imposed a penalty on the amount of the tax claimed. The failure to pay the additional tax claimed was because of an honest doubt as to liability. The learned court below sustained the protest of the taxpayer. Under such circumstances no penalty should

be exacted. The dispute between the Commonwealth and the taxpayer, resulting in litigation even in this Court, constitutes "litigation, or other unavoidable cause for delay" which, under Art. IV, section 38, of the Act of 1919, supra, relieves the imposition of penalty. Interest at 6%, however, should be imposed upon the unpaid balance of tax computed from the date of the death of the life tenant on June 6, 1945: *Miller's Estate,* 182 Pa. 157, 37 A. 1000; *Husband's Estate,* 316 Pa. 361, 175 A. 503.

The decree of the court is reversed and the record is remitted with direction to make an appraisement and assessment in accordance with this opinion. Costs to be paid out of the estate.