## Feeney Estate

*Robert Winfield Baile,* and *Pepper, Bodine, Stokes and Hamilton,* for accountant.

*Elgin E. Weest,* for Commonwealth.

VAN RODEN, P. J., April 26, 1950.—Decedent died June 3, 1948. During the course of the administration of the estate the executor filed a statement of debts and deductions listing executor's commission in the sum of $3,720.18 and counsel fee of $3,500. On March 17, 1949, the accountant paid $7,905.76 inheritance tax. On November 4, 1949, the register of wills submitted an inheritance tax notice stating that the appraisement had been completed and containing a notice thereon that the tax was paid in full.

When the first and final account of the executor was called for audit on December 5, 1949, it appeared that no credit for payment of the executor's commission was claimed in the account and the counsel fee was listed at $2,000; whereupon the Commonwealth claimed an additional tax of $522.02 by reason of the discrepancies between the statement of debts and de-

ductions and the account. The auditing judge disallowed the claim for additional tax on the ground, that the assessment had become final in the absence of an appeal within the statutory period. The Commonwealth having filed exceptions to the adjudication nisi, the matter now comes before the court for review.

The Pennsylvania transfer inheritance tax is "imposed upon the clear value of the property subject to the tax": Act of June 20, 1919, P. L. 521, sec. 2, as amended, 72 PS §2302. It is not a tax on the property itself but an excise on the privilege of inheritance: Schmuckli's Estate, 341 Pa. 36, 41 (1941) ; Schaeffer's Estate, 35 Del. Co. 262 (1947). The "clear value of the estate" is, therefore, not the subject of the tax but merely the measure thereof.

In ascertaining the "clear value of the estate" the legislature has allowed deductions for "debts of the decedent, reasonable and customary funeral expenses, . . . reasonable expenditures for the erection of monuments or grave stones, . . . and the expenses of administration". It is not without significance that the statutory qualification of reasonableness is attached to funeral and tombstone expenses, but omitted with respect to debts and expenses of administration, thereby permitting the inference that with respect to the latter the proper standard is the amount actually expended.

It is obvious that the Commonwealth is not the intended beneficiary of a fiduciary who waives compensation or an attorney who accepts less than the customary fee in order to help the heirs or residuary legatees realize greater benefit from the estate. Nevertheless, any action which increases the assets for distribution necessarily inures to the benefit of the Commonwealth since the inheritance tax "is really not a tax at all in the ordinary meaning of the word, but rather a dis-

tributive share of the estate which the State retains for itself": Tack's Estate, 325 Pa. 545, 548 (1937). The share of decedent's estate appropriated by the State is taken from the clear value of the estate for distribution, and the nature or identity of the component parts of the estate from which such net balance results is wholly immaterial: Id. at 552.

Thus, from a consideration of the nature of the Pennsylvania transfer inheritance tax, the court concludes that deductions are properly limited for commissions and fees only to the extent actually paid by the estate.

The next question to be considered is whether the Commonwealth is now barred from questioning the assessment or the propriety of the deductions because of its failure to appeal therefrom. It is settled with respect to the appraisement of assets of an estate, that the "assessment is final and conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal": Darsie Estate, 354 Pa. 540, 542 (1946).

"When an appraisement and assessment purport to be a final determination of the value of the *property appraised* and the *rate assessable*, the assessment and appraisement are conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment had been made either as to the *value* of an asset or the *rate* of tax": Reynolds Estate, 359 Pa. 616, 620 (1948). However, the register may suspend any item pending its final determination: Id.

There is dictum in Borie's Estate, 13 D. & C. 355, 359 (1930), that with respect to a credit claimed for additional administration expenses claimed and allowed as a deduction, "it could hardly be claimed that the Commonwealth could claim an additional tax should the expenses actually prove thereafter to have been less". But a different legislative purpose appears

evident in the amendment of May 27, 1943, P. L. 757, sec. 1, 72 PS §2302, which provides that:

". . . whenever the allowance of any deduction by the register of wills from the gross value of such estates shall be in dispute, the question of allowance shall be determined by the court having jurisdiction of the accounts of the personal representative of the decedent in the adjudication made by such court upon any such account, and unless either party shall, by exceptions to the account or to the adjudication thereon duly presented as provided by law, raise its objection to the allowance or disallowance of a deduction for any credit claimed in the account or any award made in the adjudication, as the case may be, the adjudication confirming the account or making the award shall conclusively establish that the deduction should be allowed or disallowed, as the case may be."

The apparent effect of the amendment is to permit either the taxpayer or the Commonwealth to raise at the time of audit any question concerning the allowance or disallowance of deductions, thereby operating as a suspension of disputed deductions until the time of audit. Such procedure is advantageous not only in tending to reduce multiplicity of hearings, but is also effective to prevent possible abuses by a fiduciary who might otherwise set forth items in the statement of debts and deductions without any intention of actually paying same. The Commonwealth has no effective check as to which debts and deductions have actually been paid until the account has been filed and called for audit. Since there has not yet been a distribution of the assets, no one is prejudiced by a judicial review of the items in dispute at the time of audit, although previously considered in the computation of the tax. The action of the Commonwealth in accepting payment of tax before the filing of the final account did not estop

it from collecting further tax if such tax became legally due: Heberton Estate, 351 Pa. 564, 569 (1945).

Accordingly, the court holds that in the computation of inheritance tax administration expenses may be deducted from the appraised value of the gross assets only to the extent actually expended, and that the Commonwealth may properly raise such issue at the time of audit.

The exception of the Commonwealth is hereby sustained, the claim of the Commonwealth for additional inheritance tax in the sum of $522.02 (with interest) is hereby allowed, and accountant is directed to pay same out of the assets of the estate remaining in his hands, and additional credit is hereby allowed unto him therefor.

As so modified, the adjudication is in all other respects hereby ratified and confirmed absolutely.