## Shultz Estate

*Joseph W. Ray* and *Uhl & Uhl*, for administrator.
*A. M. Matthews*, for exceptants.

LANSBERRY, P. J., February 21, 1951.—This case is before the court on exceptions filed by the Commonwealth of Pennsylvania to the first and final account of the administrator, and presents the question of the liability of the estate for certain inheritance tax claimed by the Commonwealth and denied by the administrator.

Frank J. Shultz died intestate on August 8, 1948, survived by his widow and one son, and letters of administration were granted August 19, 1948, to Joseph W. Ray, Jr., by the clerk of the Orphans' Court of Somerset County. An estate inventory and appraisement was filed November 5, 1948, and included, inter

alia, two items, the subject of this controversy, as follows: Item 15, certificate no. N53676, dated June 22, 1935, for 100 shares of common stock of Philadelphia & Reading Coal & Iron Corporation, valued in the sum of $1,812.50, and item 16, certificate no. A-NY66239, dated June 21, 1935, for 100 shares of common stock of Transamerica Corporation, valued at $1,162.50. On November 15, 1948, the inheritance tax appraiser for the Commonwealth filed an inheritance tax appraisement, which appraisement included and fixed the value of the personal property at amounts identical with that as filed by the estate appraisers and increased the value of the real estate. On June 29, 1950, the administrator prepared and executed a statement of debts and deductions which he lodged with the clerk of the orphans' court, in which statement he claimed "additional credits for property included in the inventory but not owned by decedent at the time of his death, as follows: Fifty shares Transamerica Corporation stock appraised for $581.25 and 100 shares common stock Philadelphia & Reading Coal & Iron Corporation appraised for $1,-812.50."

On August 10, 1950, the administrator filed with the clerk of the orphans' court his first and final account as administrator, in which account he charges himself, inter alia, with the two stock certificates as set forth in the inventory and appraisements and in that portion of his account asking credit against the assets charged, he listed the 100 shares of the Philadelphia & Reading Coal & Iron stock at the appraised amount thereof and the 50 shares of the Transamerica Corporation stock in the amount of $581.25, being one half of the value thereof set forth in the inventory.

No appeal was taken from the appraisement filed or assessment of tax made by the inheritance tax appraiser. Not until July of 1949 did the administrator discover, when he attempted to convert or offer for sale

these securities, that the Philadelphia & Reading Coal & Iron Corporation had been reorganized subsequent to the date of the issue of the stock to decedent and prior to his death, viz., on or about January 1, 1945, resulting in complete loss of the stock, and further, that after the date of the issue of the Transamerica Corporation stock to decedent and prior to his death, that corporation was reorganized and decedent's shares therein reduced from 100 to 50 shares of the common stock. These facts were supported by affidavit and not contradicted by the Commonwealth.

Exceptions to the account were filed September 13, 1950, by the clerk of the orphans' court, asserting that the administrator had not paid all of the transfer inheritance tax due the Commonwealth and challenging the credits claimed on account of the stock. In due time exceptions to the account were filed by the Department of Revenue of the Commonwealth of Pennsylvania, the exceptions being that there was a balance of $182.85 due on inheritance tax which had not been paid or arrangements for payment thereof made; further additional exceptions were filed by the Bureau of County Collections of the Department of Revenue to the credits claimed in the matter of the two stocks above recited, the exception being that the items are neither debts nor allowable deductions when assessing inheritance tax.

The contention of the Commonwealth is that the appraisement for inheritance tax purposes filed November 15, 1948, and the assessment of the tax thereon at the rate of two percent is final, binding and conclusive since no appeal was taken therefrom and the present proceeding is an attempt to do indirectly that which is prohibited by statute and the decisions of our appellate courts.

A brief review of the statute and reported cases discloses the basis for the several contentions here.

The present Inheritance Tax Law is the Act of June 20, 1919, P. L. 521, and provides in section 13 thereof (72 PS §2327) as follows:

"Any person not satisfied with any appraisement of the property of a resident decedent may appeal within thirty days to the Orphans' Court, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. Upon such appeal, the court may determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme or Superior Court."

This section of the inheritance tax law was amended by the Act of June 22, 1931, P. L. 689 by adding that "The appeal shall specify all the objections to said appraisement, and any objections not specified in the appeal shall not be considered by the court." The appropriate section was further amended by the Act of July 15, 1935, P. L. 1028, by providing that the amount of the tax assessed may be paid without prejudice to the taxpayer's rights to file an appeal and other provisions, not material to this issue, where an appeal is desirable. A fourth amendment to the act was made by the Act of May 27, 1943, P. L. 757, which extended the time for appeal from 30 days to 60 days.

This provision of the Inheritance Tax Law received careful consideration by Judge Stearne of the Orphans' Court of Philadelphia County, now Mr. Justice Stearne, in the frequently cited case of Borie's Estate, 13 D. & C. 355, which is authority for the statement of the law that "An appraisal unappealed from becomes final and binding upon all parties, where a full disclosure has been made." In that case an inventory and appraisement of the personal estate was filed and subsequently a completed appraisement and assessment was filed by the appraiser, appointed by the register, who fixed the clear value of the estate and the tax was

paid on account thereof. This appraisement did not include an award from a brother's estate to the trustee in Borie's Estate and that award became the subject of the subsequent appraisement and tax assessment. The court held that a new item clearly taxable came into the estate and that the credits allowable as to that appraisement were limited to "those which relate solely and exclusively to the res of such assets and the administration expenses pertaining to the collection and distribution thereof" and did not include any deductions which might have been taken at the time of the prior or first appraisement and tax assessment. Judge Stearne therein said, as applicable to this controversy: "In my opinion, an appraisal of the clear value of an estate and the assessment of the tax draws, as it were, a red line across the page, and, unappealed from, becomes final, conclusive and binding upon all parties."

In Commonwealth v. Chamberlin Estate, 346 Pa. 472, it appeared that at the audit claims against the estate were allowed by the auditing judge which had not been considered in a previous determination of the transfer tax and the auditing judge thus ruled there had been an overpayment of the inheritance tax and therein attempted to do substantial justice by crediting the overpayment of the tax against taxes yet due the Commonwealth. The Supreme Court held this was error since the matter of the refund of taxes erroneously paid is regulated by the Fiscal Code of August 5, 1941, P. L. 797, 72 PS §503.

While Mr. Justice Stearne in writing the above opinion refers to Borie's Estate, supra, with referential approval, Commonwealth v. Chamberlin Estate is not controlling here for the obvious reason that we are not now concerned with an erroneous overpayment of tax. In Haid Estate, 347 Pa. 159, Borie's Estate, supra, is again cited with approval; here the Commonwealth, as found by the orphans' court, made its ap-

praisement and the estate was found to be insolvent and consequently no tax due the Commonwealth; six years later and prior to the audit, the fiduciary compromised two claims which had been allowed as deductions in the prior tax assessment; at the audit the Commonwealth claimed a tax but the same was refused for the reason that the appraisement having been fixed and unappealed from, it was final. In Haid Estate an alleged worthless asset became in fact an asset of worth.

Darsie Estate, 354 Pa. 540, reiterates and cites with approval Borie's Estate, supra, to the affect that when the assets of an estate are appraised and the taxes are assessed, in the absence of an appeal, the action is final. In Darsie Estate the Commonwealth having appraised the whole estate at two percent without having appraised and valued the life estate, waited until the life tenant died and then appraised and valued the estate at 10 percent, allowing credit for the life estate consumed at two percent. This was held error on the part of the Commonwealth and the supplemental appraisement of the unconsumed asset was stricken off and the tax claim disallowed. The most recent appellate court review of the position contended for by the Commonwealth is Reynolds Estate, 359 Pa. 616, in which case the register reserved to the Commonwealth the right to appropriately tax, upon the death of the life tenant, any distribution made to the collateral heirs, and upon the death of the life tenant did not make a reappraisement and additional assessment, which the Supreme Court, in overruling the lower court, sustained, for the reason that "the register may *suspend* any item in the appraisement or assessment pending its final determination," of which a life estate is an example.

Other cases may be cited which follow Borie's Estate, but an examination of the appellate court cases dis-

closes that none of them dealt with a situation where the appraisement included an item which was in fact not an asset passing to the administrator for administration and subsequent distribution to the heirs; that unlike the cases cited is a governing fact in the instant case. Other cases with similar holdings include Webster's Estate, 314 Pa. 233; Biddle's Estate, 37 Montg. 178; Blumenthal's Estate, 51 Montg. 214.

While admitting the basic doctrine in Borie's Estate and conceding the principle reiterated in the cases applying that doctrine, the administrator urges upon us the inapplicability thereof. He contends that there is an exception to the rule where a manifest error has been made and cites for our consideration Ernst's Estate, 317 Pa. 367, which decision was based upon Moneypenny's Estate, 181 Pa. 309.

In Moneypenny's Estate, supra, the appraisement was made as to the personal property and the tax paid; 12 years thereafter the new inheritance tax appraiser valued and appraised the proceeds of the sale of New York real estate and assessed a tax on the proceeds; neither the real estate nor any contemplated proceeds from the sale thereof had been included in the original appraisement for the specific reason that the appraiser believed the same untaxable. In reversing the lower court and striking off the second tax assessment the court, by Mr. Justice Mitchell, said:

"The statutes do not contemplate or provide for more than one appraisement. On the contrary the intent is that the first shall be complete and final."

In the latter part of that opinion Justice Mitchell referred to Commonwealth v. Freedley's Exrs., 21 Pa. 33, which reference concerned property that may be fraudulently concealed, accidentally overlooked or unknown to the estate representatives at the time of appraisement and which may be the subject of a later ap-

praisement and then says: "This language however is intended to apply to the classes of fraud, accident or mistake which in equity are sufficient to open all transactions to re-examination and correction. The exceptions that it makes are not founded on any provisions of the statutes but on the general principles of law, and clearly do not include cases like the present where there was no fraud, accident or mistake, but at most an erroneous exercise of judgment by the appraiser. For that, the only remedy under all our cases, was an appeal."

In Ernst's Estate it is said:

"The outstanding authority on the immediate question under consideration is Moneypenny's Est., 181 Pa. 309, (where it was held that) in the absence of fraud, accident or mistake, there cannot be a second appraisement of property for the purpose of the collateral inheritance tax," and similarly in Fidelity-Philadelphia Trust Co. et al. v. Board of Finance and Revenue, 62 D. & C. 127, "When no appeal is taken from an appraisement of property for transfer inheritance tax purposes and it is absolutely confirmed, it is conclusive on all parties, in the absence of fraud, accident or mistake: Ernst's Estate, 317 Pa. 367; Heberton Estate, 351 Pa. 564."

If Ernst's Estate and Fidelity-Philadelphia Trust Co. v. Board of Finance and Revenue, as well as Moneypenny's Estate, are authority for an exception to the strict rule of conclusiveness and finality of the appraisement, in cases of fraud, accident or mistake, and we believe they are such authority, is the mistake or error in the instant case such as comes within the exception? This decedent was engaged in a small mercantile business and kept his own confidences; his death occurred suddenly by drowning and it is not apparent that anyone knew much about his business or financial affairs. It is to be supposed that neither the estate ap-

praisers nor the Commonwealth appraiser actually knew the worth of these certificates i.e. the stock represented by them at the time of the decedent's death, although it is not clear how the values placed on these two items were ascertained. Later it was discovered that at the time of the death of Frank Shultz, he had no valuable stock in the Philadelphia & Reading Coal & Iron Corporation and had the value of only 50 shares of Transamerica stock; the inclusion of the 100 shares of Philadelphia & Reading Coal & Iron Corporation stock and 50 shares of Transamerica was obviously a mistake or error.

There are several reported lower court cases in Pennsylvania which support the administrator's contention: In Tagg's Estate, 38 Dauph. 48 (1933), the estate and Commonwealth appraisements both included a mortgage which had in fact been disposed of prior to death of the mortgagee therein; this fact was not known to the executor at the time; upon a petition nunc pro tunc by the excutor, more than 30 days having elapsed subsequent to the filing of the appraisements, Judge Fox held the inclusion of the mortgage was an excusable mistake and under equitable principles the error should be corrected. Judge Niles concurred in the reasoning set forth in Tagg's Estate three years later in Gochenour's Estate, 28 D. & C. 560, where the Commonwealth sought to collect inheritance tax of $2,000 value of real estate which in fact had been sold by decedent prior to his death for $6,000 and which proceeds of sale were included in the personal estate, but which real estate the appraiser neverthless included and valued at $8,000. No appeal had been taken within the time allowed and 14 years had elapsed when the register of wills sought to collect the tax remaining unpaid according to his records. The court held it was a plain mistake of the appraiser and that the question of ownership was a material one, saying: "The appraise-

ment unappealed from was only conclusive as to the value of such property as was subject to tax": Adams' Estate, 34 D. & C. 93 (1938) is one in which a judgment included in the inventory and appraisement was found to be of no value and uncollectible and after the statutory period had passed, Judge Waite allowed an appeal nunc pro tunc, finding the inclusion of the judgment to be an excusable mistake and determining that on equitable principles, as relied upon in Tagg's Estate, supra, an appeal was necessary to insure substantial justice. In Heiden Estate, 67 D. & C. 580 (1948) the court, after the account was confirmed, allowed an appeal from the inheritance tax appraisement and the appraisement was accordingly amended resulting in additional taxes, the court relying on Ernst's Estate, supra, it appearing that the original appraisement as to the value of the land was clearly erroneous. And in Holtzapple Estate, 68 D. & C. 201 (1948), where the Commonwealth appraiser included an asset, the irrevocable half of an inter vivos trust estate, Judge Gross, finding the alleged asset to be erroneously included, dismissed the petition to file an appeal nunc pro tunc but directed that the error be corrected in adjudicating the trustee's account which admittedly had the same effect as if the appeal had been allowed.

From a careful examination of the statute and the authorities, the law is that where an appraisement for inheritance tax is made and is unappealed from within the statutory period of 60 days, it is final, conclusive and binding upon all parties as to all items therein unless there is manifest in that appraisement fraud, accident or excusable mistake as to a material part thereof.

In the administration of this estate we are satisfied that an excusable mistake was made in including all of the Philadelphia & Reading Coal & Iron Corporation stock and 50 shares of the Transamerica stock; that this mistake is a material one and if not corrected would

result in an injustice to these heirs and an unjust enrichment to the Commonwealth; that this orphans' court has authority to relieve from the effect of the mistake and correct the same in the present proceedings; that accordingly, the credits claimed by the administrator in his first and final account should be allowed and the inheritance tax recalculated in accordance with this opinion. Therefore, the following

### Order

Now, February 21, 1951, the exceptions filed to the confirmation of the first and final account of the administrator are severally overruled, and it is directed that a recalculation and assessment of the transfer inheritance tax be made not inconsistent with this opinion and upon payment of the tax as reassessed and the costs of this proceeding by the estate, the account is thus confirmed.