## Jenkins Estate

*High, Swartz, Flynn & Roberts,* for appellants.
*Paul P. Wisler,* for Commonwealth.

VAN RODEN, P. J. (specially presiding), August 8, 1952.—This is an appeal filed on behalf of the executor and the remainderman of decedent's estate from a supplemental inheritance tax appraisement filed by the Commonwealth of Pennsylvania on December 7, 1951.

The facts as set forth in a written stipulation of counsel dated May 13, 1952, are as follows:

Decedent died December 11, 1931. His last will and testament, dated February 5, 1930, was duly probated in the office of the Register of Wills of Montgomery County on January 6, 1932, and letters testamentary issued thereon to Jenkintown Bank and Trust Company, the executor named therein.

On February 11, 1932, the executor filed in the office of the Register of Wills of Montgomery County an inventory and appraisement of the assets of decedent's estate. The inventory and appraisement contained, inter alia, an item described as follows:

"Glenside Bank & Trust Co. balance $2,306.56
app.                0"

It appears that the Glenside Bank and Trust Company was closed by the Secretary of Banking of the Commonwealth of Pennsylvania on October 2, 1931, and was in liquidation at the time of decedent's death. It further appears that at the time of the filing of the inventory and appraisement, no liquidating dividends had yet been declared and the value of the claim of the estate could not then be determined.

On February 20, 1932, the official appraisement of the estate for inheritance tax purposes was filed in the office of the register of wills, and the appraisement contained the following notation:

"A portion of the assets of this estate consist of its claim against the Glenside Bank & Trust Co., and the value of this claim is not being appraised at this time. Upon payment of the final dividends and liquidation of the affairs of this institution, or at any time when an intelligent appraisement of this claim can be made, this asset will be appraised in a supplemental appraisement."

By written notice dated March 8, 1932, the register of wills notified the executor that the Commonwealth claimed inheritance tax due in the amount of $581.23.

On March 9, 1932, the executor paid the sum of $556.17 (being amount of tax less five percent discount).

The executor filed its account on February 4, 1933. This account disclosed that the accountant had received from the Glenside Bank and Trust Company three dividends totaling 25 percent of the deposit, or $576.65. This account was duly adjudicated by this court in April 1933. No claim was presented at the audit for any additional inheritance tax. One half of the distributive estate was awarded unto decedent's widow, and the remaining one half to a trustee for the payment of net income to Hannah E. Jenkins for life with remainder in favor of Magdelina Alberta Zeisloft, in accordance with decedent's will (as modified by the widow's election).

Hannah E. Jenkins died on June 7, 1951, and the trustee filed his first and final account on August 8, 1951. In this account the accountant charged itself with dividends received on account of the one-half share of the claim against the Glenside Bank and Trust Company awarded to the trustee, which dividends received by the trustee amounted to $313.10.

On December 7, 1951, a supplemental appraisement of the dividends received on the Glenside Bank and Trust Company deposit, in the total sum of $1,202.89, was filed in the office of the register of wills and inheritance tax was assessed thereon in the sum of $72.17, with interest and penalties from three months after the date of receipt of each dividend by the executor, widow and trustee, respectively. This sum of $72.17 comprises collateral inheritance tax at the rate of 10 percent on the one-half share of dividends received by the trust estate, to wit, $60.16, and direct inheritance tax at the rate of two percent on the one-half share received by the widow, or $12.01. It is conceeded that neither the executor, the trustee, the remainderman nor the widow had any actual notice or

knowledge of the reservation clause in the original inheritance tax appraisal until the question was raised in 1951.

It is well settled in this Commonwealth that an appraisement for inheritance tax purposes purports to be a final determination of the value of the property appraised, and such appraisement is conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment has been made as to the value of an asset: Heberton Estate, 351 Pa. 564, 567 (1945). However, it is equally well settled that the register of wills (as agent for the Commonwealth of Pennsylvania) may suspend any item in the appraisement pending its final determination: Reynolds Estate, 359 Pa. 616, 620 (1948). In the instant case, the register of wills clearly and unequivocally suspended appraisement of the value of the estate's claim against the Glenside Bank and Trust Company by noting on the original appraisement that the value of this claim was not being appraised at that time, but would be appraised "Upon payment of the final dividends . . . or at any time when an intelligent appraisement of this claim can be made". The fact that such notation was not repeated on the bill sent to the taxpayer is not controlling, since the appraisement was filed of record in a public office and constituted due notice to all parties in interest. Accordingly, the court holds that the Commonwealth was within its rights in suspending the appraisement of the value of the asset at the time the original inventory and appraisement was filed. It follows that the Commonwealth was further within its rights in appraising the assets and assessing inheritance tax thereon in 1951, unless barred by laches. It was held in Graham Estate, 71 D. & C. 125, 127 (1950), that laches may be imputed to the Commonwealth as well as to an individual, but it was further held that a six-year delay in making an inheritance tax reappraise-

ment will not bar the Commonwealth's rights where neither the fiduciary nor the remainderman have been prejudiced. In the instant case, the delay of the Commonwealth has persisted for almost 20 years, but it does not appear that such delay was due to any culpable negligence on the part of the Commonwealth. Decedent died within a few months after the bank was placed in liquidation and it could not be determined, at the time of filing the original inventory and appraisement, the extent of recovery or probable recovery on this doubtful asset. The Commonwealth's agent properly suspended action on this item until the payment of the final liquidation dividend or until such time as an intelligent appraisement could be made. The final dividend was not paid until October 5, 1945, and the date of such final payment was not called to the attention of the inheritance tax appraiser by any party interested in the instant estate until the trustee's account was filed on August 8, 1951 (following the death of the life tenant on June 7, 1951). Thereafter, within a reasonable time, to wit, on December 7, 1951, a supplemental appraisement, covering this particular asset was filed. Normally when an asset is called to the attention of the appropriate representative of the Commonwealth but is not included in the appraisement because of a mistaken notion as to its taxability, the Commonwealth is estopped from filing a supplemental appraisement covering the asset more than a year after decedent's death: Romberger Estate, 74 D. & C. 196 (1950). In that case, however, there was no action taken by the agent of the Commonwealth in suspending action on the particular asset, nor does it appear that the Commonwealth took any other steps to preserve its right to appraise and assess the asset when its value was properly determined, as was done in the instant case.

Accordingly, the court concludes that the Commonwealth has not been guilty of undue delay in making

the appraisement of the asset in question. Although the appellants have indicated in their brief that the widow is now dead it does not appear that her estate is insufficient to pay the relatively small amount of direct inheritance tax, to wit, $12.01, assessed against her share. With respect to the collateral inheritance tax of $60.16, chargeable against the remainder interest, it appears that distribution has not yet been made to the remainderman and consequently she will not be unduly prejudiced by the payment of the tax at this time.

However, the court is of the opinion that it would be unequitable to require appellants to pay any penalty or interest. The tax was not assessed until December 7, 1951, and, of course, it could not be paid until properly assessed. The delay in the assessment was no more the fault of appellants than it was of the Commonwealth, and the parties should not be penalized for such unavoidable delay. The court therefore holds that the inheritance tax assessed on December 7, 1951, shall be paid in the amount of the assessment, to wit, $72.17, but without penalty or interest.

Accordingly, the court enters the following

### Decree

And now, to wit, August 8, 1952, it is hereby ordered, adjudged and decreed as follows:

1. The appeal of the Jenkintown Bank and Trust Company, executor of the estate of Benjamin F. Jenkins, deceased, and Magdeline Alberta Zeisloft, sole remainderman of a certain trust constituting one half of the residue of the estate, from the supplemental appraisement and assessment for inheritance tax purposes, filed in the office of the Register of Wills of Montgomery County on December 7, 1951, is hereby disallowed and dismissed.

2. The action of the Register of Wills of Montgomery County, agent for the Commonwealth of Pennsylvania, in appraising the value of decedent's claim against the Glenside Bank and Trust Company in the amount of $1,202.89 and the assessment of direct inheritance tax thereon in the sum of $12.01 and collateral inheritance tax thereon in the sum of $60.16, or total tax of $72.12, is hereby approved and sustained.

3. It is further directed that the payment of such supplemental inheritance tax shall be without penalty or interest.

4. The parties shall bear their respective costs of these proceedings.

5. An exception is hereby allowed unto each party in interest.