## Oberdorfer Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following opinion of Lefever, J., January 12, 1960.—Should the amount of Federal estate tax previously paid by the executors upon decedent's estate be added to the actual value of a future interest therein at the time the right of possession later accrues to the remainderman, in appraising the value thereof for inheritance tax purposes? This question of first instance is presented on this appeal from the decree of the register of wills so assessing inheritance tax. The Commonwealth states that this is a test case, with many like cases awaiting the final decision hereof.

Testator died on December 23, 1955. By his will he bequeathed $62,000 in specific legacies to various persons "free of tax" and the residue of his estate in trust

to pay the income therefrom to his sister, Norma O. Bacharach, for the duration of the trust, and to pay over the principal thereof to Justin L. Bacharach, petitioner in this case, one-third when he attained the age of 50 years, one-half of the remaining principal when he attained the age of 55 years and the entire remaining principal when he attained the age of 60 years.

The executors of testator's estate, on March 22, 1957, paid a Federal estate tax of $239,048.96. By adjudication dated June 19, 1957, Judge Shoyer approved the account of the executors and awarded the residue of the estate to Norma O. Bacharach and Leon J. Obermayer, trustees, for the purposes of the trust.

On December 30, 1957, petitioner attained the age of 50 years, and with it the right to receive one-third of the principal of the trust. The trustees then filed a so-called "supplemental inheritance tax report and appraisal", setting forth that on December 30, 1957, the assets of the trust had a gross value of $492,827.49 and a net value, after deducting allowable administration expenses, of $490,475.99, and that one-third thereof had a value of $163,491.99. By adjudication of Judge Bolger the trustees' first account was approved, one-third of the principal was awarded to petitioner "subject to such Pennsylvania transfer inheritance tax as may be assessed and found due" and the remaining two-thirds were awarded back to the trustees for the purposes of the continuing trust.

On May 15, 1959, The Register of Wills of Philadelphia County filed his appraisement of this estate, inter alia, as follows:

"Assets re-appraised as of 12/30/- 1957, date of attainment of age 50 years by Justin L. Bacharach, nephew, when the first term of years terminated, at

which time he was entitled to the distribution of one-third of the principal ... $492,827.49
"Deductions allowed .............. 2,351.50

"Net re-appraised Trust .......... $490,475.99
"Add back principal which has been withdrawn from the Residuary Estate to pay Federal Estate tax of $239,048.96 in 1957. .......................... $239.048.96

$729,524.95
"ONE-THIRD now distributable to nephew ........................... 243,174.98
Tax @ 15%        $36,476.25"

Petitioner has appealed from this assessment, contending that it was error to add the amount of the Federal estate tax, and that the inheritance "tax should be assessed solely upon the actual value of the one-third share distributable to him at the time the right of possession accrued to him, or upon one-third of $490,475.99, or the sum of $163,491.99".

The transfer inheritance tax of Pennsylvania is in many respects unique. Only a few other States have provisions similar to those raising the issue presented. Hence, it is understandable that there are no reported decisions thereon in Pennsylvania or elsewhere. The philosophy underlying the Pennsylvania transfer inheritance tax is different from estate taxation where only one tax is assessed upon the entire estate at the time of death (less specified allowable deductions). In contrast, in Pennsylvania trusts or legal life estates, where income for a specified period is given to one person or to succeeding persons and the principal goes to other persons, successive inheritance taxes are assessed upon the value of each life estate, and, finally, upon the remainder.

Section 2 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2302, sets forth the method of computing the tax at the time of decedent's death (i.e., when the first life estate comes into being or the estate goes outright). In assessing the tax at this time the statute directs the register to appraise the "clear value" of the estate, viz., the gross value less "the debts of the decedent, reasonable and customary funeral expenses, bequests, or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection of monuments or grave stones, grave and lot markers and the expenses of the administration of such estates . . ." Section 2 further directs that "no deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States . . ."

Section 3 of the act governs the assessment of inheritance tax upon the value of the future interest at the time the right of possession accrues to the owner, viz:

"Where there is a transfer of property by a devise, descent, bequest, gift or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner*, but the owner may pay the tax at any time prior to his

coming into possession": 72 PS §2304. (Italics supplied.)

The reason for the different basis of valuation of outright gifts and life estates from remainder interests was aptly described by President Judge Klein of this court in Heberton's Estate, 51 D. & C. 285, 295, affirmed per curiam, 351 Pa. 564, 568, in the following language:

"Section 3 of the Act of June 20, 1919, P. L. 521, which is a substantial reënactment of section 3 of the Act of May 6, 1887, P. L. 79, is clearly intended for the benefit of the remaindermen and gives them the right to elect when they wish to pay the transfer inheritance tax. It is also clear that assessment of the tax shall be on the value of the estate at the time the tax is paid. This protects the remaindermen against inflationary rises in values and enables them to fix with finality the amount of their tax liability without being compelled to speculate on future economic developments. At the same time, if the tax is paid before the remaindermen come into actual possession, the Commonwealth is protected against future drastic reduction of the value of the corpus, which in the present case was in excess of 50 percent of the appraised value."

Is is apparent from the foregoing that the legislature has expressly given the remainderman the election of the time upon which to appraise his interest and to pay the tax. He may pay the tax on the estimated value of the remainder at the date of decedent's death, in which event he is allowed specified deductions from the gross appraisement, but Federal estate tax is *not* one of the allowable deductions. Consequently, if he pays the inheritance tax at that time, the Federal estate tax constitutes a part of this value on his interest, but he escapes liability for tax upon any increase in value of the estate between the death

of decedent and the time he receives the future interest (and in many estates the accretion is substantial). On the other hand, if the remainderman elects, he may postpone payment of the tax until the time when he becomes entitled to possession, at which time the tax is assessed upon the "actual value of the estate" which he receives. In that instance, he pays tax on an actuality, rather than a possibility. Thus, if the estate has substantially increased in value by inflation, by wise or speculative investments of the trustees or in any other manner, he is liable for tax upon the additional value. On the other hand, if the estate has decreased for any reason such as an uninsured fire, unwise investments of the trustees, a drop in the securities' market or a financial depression, he pays the lower tax on the actual value of the estate he in fact receives, and the Federal estate tax originally paid is not involved.

In Kirkpatrick's Estate, 275 Pa. 271, it was held that the cited provision of the statute was "plain and unambiguous language, holding that federal tax should not be deducted in determining the amount of the inheritance tax . . .", and, accordingly, the amount of the Federal estate tax paid was not deductible in fixing the value of the taxable estate which was given outright. Likewise, the Federal estate tax was held not deductible in evaluating life estates: Cowan Estate, 78 D. & C. 543, and Canuso Estate, 12 D. & C. 2d 460. These cases dealt with the valuation of the taxable estate at the date of decedent's death and in conformity with the precise language of section 2 of the statute. However, they do not apply to the valuation of the remainder estate, which is covered by section 3 of the act.

It is significant that the Commonwealth, from the enactment of the Transfer Inheritance Tax Act in 1919 until 1958, has interpreted it as set forth above.

In 1958, the Commonwealth reversed its position. It now urges that its previous interpretation of the statute was erroneous, and that the Federal estate tax previously paid must be added to the value of the future interest at the time of accrual in possession, in determining the then value of the remainder interest.

It is clear that the Commonwealth is not estopped from correcting an erroneous practice by the errors made by its officials, agents or employes in the past: Commonwealth v. Western Maryland Railway Company, 377 Pa. 312, and cases therein cited. Nor does the past error of an administrative agency give petitioner a vested right to have the error continued. "An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it": Federal Deposit Insurance Corporation v. Board of Finance and Revenue of Commonwealth, 368 Pa. 463, 472. See Commonwealth v. Quaker City Cab Co., 287 Pa. 161.

However, "When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters— ... (8) legislative and administrative interpretations of such law": Article IV, sec. 51, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

Therefore, if there be any ambiguity in the statute, the continuous administrative interpretation thereof for a period of 37 years is strong indication that this was the correct interpretation thereof. Moreover, the fact that during these 37 years the legislature took no specific action to change the administrative practice, although it amended other portions of the Transfer Inheritance Tax Act, indicates that the legislature approved the administrative interpretation: Common-

wealth ex rel. v. Beamish, 20 D. & C. 324. In that case the Common Pleas Court in Dauphin County, speaking through President Judge Hargest, stated, at pages 326 and 327:

"In view of this long acquiescence by both the legislature and the administrative department, the court should not lightly overturn this construction. Of course, where a statute is clear, neither legislative nor administrative interpretation is to govern, but where there is ambiguity recourse may be had to such legislative or administrative interpretation to aid in its construction. The legislature amended the Act of 1893 [June 10, 1893, P. L. 419] in 1903 and in 1931, and these provisions were untouched. . .

"The legislature, having had the act twice before it for amendment, did not see fit to change the interpretation given by the administrative department. We must assume that the legislature knew the interpretation which the administrative department of the government put upon it, and continued the act in force without amendment. The legislature therefore must be considered as having also adopted that interpretation. The statute is not clear, and we are asked . . . to read something in it which cannot be found there in terms, and thereby to set aside the interpretation which has been acquiesced in for 40 years. This we decline to do." See also McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 75 L. Ed. 1183, 51 S. Ct. 510 *.

---

* It is noteworthy that the proposed "Inheritance and Estate Tax Act of 1959", House Bill 1195 of the 1959 Session of the legislature, expressly provided that Federal estate tax should not be included in appraising a future interest as here involved (see sections 601 and 651), but included such tax where the taxpayer elected to accelerate the date of payment of the inheritance tax. See section 651, 713(a) and 714(a). Both the House and the Senate passed the bill containing these provisions. However, the bill failed of passage only because of controversy over inclusion

It follows that this court should adopt the long established administrative interpretation, if the language involved here is ambiguous. But the language is *not* ambiguous. Section 3 of the Transfer Inheritance Tax Act provides that: "The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner . . .". As stated by this court in Kelley Estate, 5 D. & C. 2d 1, 3: "The language of this section seems so clear as to require no interpretation, indeed, to admit of no argument". The statute provides that only the actual value of the assets in the estate at the time the remainderman's right accrues shall be taxed. This is apparent from the language ". . . the tax on such estate shall not be payable, nor shall interest begin to run, until the person liable for the same shall come into actual possession of such estate . . ."

Petitioner never came "into actual possession" of the funds used to pay the Federal estate tax. This tax was paid by the executors two years before and formed no part "of the estate at the time the right of possession accrues to the owner" (petitioner in the instant case). And the word "estate" refers to the estate, viz., future interest, which takes effect in possession after the expiration of the period of years. (The antecedent of "such" is not the "property" or "estate" referred to in section 2). It follows that the Federal estate tax which was paid two years before, based on the valuation at decedent's death four years before, was not part of the estate "at the time the right of possession accrues to" petitioner. Furthermore, there is no provision in section 3 respecting deductions, nor disquali-

of article XI, setting up restrictions for entry into the safe deposit box of decedent. Hence, the legislature by express action approved the practice of *not* including Federal estate tax in appraising a future interest such as here at issue.

fication for deductions. This is logical, because deductions are normally allowable at decedent's death, not at the time a remainder falls in, when the question is the value of what remains. This was clearly so stated in Reynolds Estate, 359 Pa. 616, 621:

"While the value of *life estate* is fixed commencing with the date of the death of testator: Rowell's Estate, supra [315 Pa. 181], the value of *remainders* is determined as of the time the *right to possession* accrues, i.e., at the death of the life tenant: *Jewell's Estate*, 235 Pa. 119, 83 A. 610; Simpson's Estate, 332 Pa. 115, 2 A. 2d 851, unless the tax on the entire estate is paid under section 3 of the Act of 1919, supra: *Heberton Estate*, supra, p. 568."

If the Commonwealth's position were adopted, the result would be harsh, confiscatory or even worse. For example, let us suppose that the gross value of the instant estate as of December 30, 1957, instead of $492,827.49, had been reduced to $40,000 because of unwise investments, a financial panic, collapse of the stock market or other reasons. If the Commonwealth's theory be correct, there must be added to the $40,000 value of the shrunken estate the $239,048.96 Federal estate tax heretofore paid, making a total value of $279,048.96. Inheritance tax upon this at 15 percent amounts to $41,857.34. As a consequence, the remainder interest of petitioner would be wiped out and petitioner would, at least theoretically, owe the Commonwealth $1,857.34. Cf. Jennings Estate, 19 D. & C. 2d 240. The harshness of such a result is self-evident. Moreover, petitioner would be in the anomalous position of having added to his remainder interest Federal estate tax computed upon an entirely different and more valuable estate, decedent's estate in 1955, not the hypothetically reduced estate of 1957, on which the Federal estate tax would have been much less had it

been then levied. This further demonstrates the fallacy of the Commonwealth's position.

It would appear that the officers charged with the duty of administering the transfer inheritance tax from 1919 to 1958 were mindful of the harsh and confiscatory result that would follow if the Commonwealth's present interpretation of the statute had been adopted. Losses in trust estates were substantial during the great depression of the 1930's, and unfortunately did occur in proportions as severe as those postulated in the above illustration. Hence, the long established administrative interpretation of the Transfer Inheritance Tax Act has real justification in actual experience.

Finally, in construing a tax statute any doubt or uncertainty must be resolved in favor of the taxpayer: Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370. In that case the Supreme Court stated, at page 376:

" 'In approaching these questions, it must be remembered that this is *a taxing statute which must be strictly construed.* We are not dealing with exemptions, as the Commonwealth has suggested, but with the essential right to the tax. Any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. . . . The words imposing the tax should be clear and unambiguous . . . ; nor can words be extended by implication.' "

And in Paper Products Company v. Pittsburgh, 391 Pa. 87, 94, the court said:

"Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities [citing cases]."

We are here dealing with the imposition of the tax remainders, and not exemptions, as the Commonwealth argues. Therefore the cited cases are apposite.

The Commonwealth argues that failure to adopt its position will create lack of uniformity in the Transfer Inheritance Tax Act because of the unequal treatment of life tenants and beneficiaries of original absolute gifts as compared with remaindermen, and "pose constitutional problems". The answer is that these "constitutional problems" have not arisen in 40 years or more of the statute's life. The Commonwealth further urges that petitioner's position "would afford a perfect blue print for tax avoidance". However, it is well established that there is nothing illegal or immoral in tax avoidance; tax *evasion* only is condemned, and the legislature should eliminate the opportunity for tax avoidance if it sees fit.

For all of the foregoing reasons the hearing judge concludes that the register of wills erred in adding the $239,048.99 Federal estate tax previously paid by the executors to the other assets, in appraising petitioner's remainder interest in one-third of the trust principal on December 30, 1957, and in assessing transfer inheritance tax against petitioner upon that basis.

Accordingly, January 12, 1960, the appeal is sustained and the record is remitted to the Register of Wills of Philadelphia County for action not inconsistent herewith.

*Irvin Stander*, for Commonwealth.

*Richard V. Zug*, of *Obermayer, Rebmann, Maxwell & Hippel*, for appellant.

SAYLOR, J., May 9, 1960.—The Commonwealth of Pennsylvania has filed exceptions to an opinion sustaining an appeal from the action of the register of wills in appraising for inheritance tax a future interest when accruing to a remainderman, not at its real value alone but by adding to that value the amount of a Federal estate tax paid prior to the time the right of possession accrued. In adopting such practice the

Commonwealth's taxing authorities seek to reverse a policy that has been followed since the enactment of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, et seq.

Heretofore during a 38-year period it has been the practice of the administrative officers of the Commonwealth charged with taxing decedents' estates to calculate the tax on remainder interests when they came into possession at the actual value thereof and at no higher value. They did so under the provisions of section 3 of the act which states that the tax on such interests shall not be payable nor shall interest begin to run thereon "until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years": 72 PS §2304.

This is followed by the sentence:

*"The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner*, but the owner may pay the tax at any time prior to his coming into possession." (Italics supplied.)

That language has been found by the courts to be clear and unambiguous. It has always been interpreted by taxpayers and tax collectors as meaning that the tax on the remainder interest, if paid at the time of coming into possession, is not to be calculated on other than the then value of the interest. Taxes such as the Federal estate tax paid previously out of the original estate are added on as prescribed in section 2 of the act in determining the value of the remainder interest only when the tax thereon is calculated and paid prior to the coming into enjoyment of such remainder interest.

As was said by President Judge Klein of this court in Heberton's Estate, 51 D. & C. 285 (1944), at page 295, affirmed per curiam by the Supreme Court in 351 Pa. 564, the act:

". . . is clearly intended for the benefit of the remaindermen and gives them the right to elect when they wish to pay the transfer inheritance tax. It is also clear that assessment of the tax shall be on the value of the estate at the time the tax is paid."

In Kirkpatrick's Estate, 275 Pa. 271 (1922), the Supreme Court held that the language of section 2 of the act is "plain and unambiguous language, holding that the federal tax should not be deducted in determining the amount of the inheritance tax." Accordingly, such tax was held to be not deductible in fixing the value of the taxable estate which was given outright. And when the transfer inheritance tax was calculated on such estates, or on estates for life, such deduction has never been allowed. On the other hand, under section 3 of the act the Commonwealth has until now consistently followed the practice of taxing remaindermen on the actual value of the estate they are receiving. No Federal tax has been added to such value.

The Commonwealth now pleads that it erred during the past four decades in following such procedure. It now desires to assess remainder interests for taxation at the time of possession in the same manner as they are, and have been, assessed when the tax on the life estate is paid. It seeks a new analysis of the taxing statute; it claims that the old practice results in lack of uniformity in taxing remainder interests, deprives the State of revenue and affords taxpayers a blueprint for tax avoidance; and, lastly, it asserts that the legislature clearly intended to prohibit the deduction of Federal estate taxes on all portions of the Commonwealth inheritance tax.

The learned hearing judge in our opinion adequately disposed of these claims and very properly refused to interpret the language of the act to reach a result completely out of accord with previously accepted

decisions of Pennsylvania public officials administering the law and Pennsylvania judges interpreting it.

Of course the Commonwealth may properly attempt to change its policy if administrative officials have erred in the past in assessing and collecting transfer inheritance taxes on remainder interests. The Commonwealth is not estopped from correcting what it later regards as erroneous practice: Commonwealth v. Western Maryland Railway Company, 377 Pa. 312 (1954). The taxpayer has no vested right in a continuation of such practice where it is found to be not in accordance with law.

If the Commonwealth has erred in the past in interpreting the tax act, its officers have not only the right but the duty to correct their error. As was said by Justice Horace Stern, later Chief Justice, in Federal Deposit Insurance Corporation v. Board of Finance and Revenue of Commonwealth, 368 Pa. 463 (1951), at page 472:

"An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it."

The fact that for a long period of years under an administrative construction of an act favorable to him taxes were not assessed against a taxpayer cannot prevail against the plain language of the act: Commonwealth v. Quaker City Cab Co., 287 Pa. 161 (1926).

At the same time, as Justice Stern said for the Supreme Court in Federal Deposit Insurance Corporation v. Board of Finance and Revenue of Commonwealth, supra, at pages 471 and 472:

"It is true, of course, that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long pre-

vailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous . . ."

"But it will be noted that the principle of giving weight to administrative interpretation and practice under a statute is applicable only where the act is ambiguous and calls for a choice of one out of two or more possible constructions; departmental interpretation is not persuasive, much less controlling, where the statute is clear and explicit in its language."

In our opinion we do not have ambiguity here. In Reynolds Estate, 359 Pa. 616 (1948), and in Coxe Estate, 193 Pa. 100 (1899), the Supreme Court held that the language of the Act of 1919 and that of the Act of May 6, 1887, P. L. 79, of which section 3 of the present act is a virtual reënactment, fixed the valuation of a remainder interest at the value determined as of the time the right to possession accrues, namely, at the death of the life tenant. In the latter cases, Coxe Estate, supra, the opinion of Justice Green at page 105, in quoting the 1887 clause:

" '. . . the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner as aforesaid' . . .

"This is the plain, actual, common sense meaning of the words we are considering . . .", namely, that the only valuation involved is that of the estate when the remainderman receives it.

As our colleague, Judge Shoyer, said in Kelley Estate, 5 D. & C. 2d 1 (1955), at page 3:

"The language of this section seems so clear as to require no interpretation, indeed, to admit of no argument."

In other words, the only thing that the Commonwealth can tax when a remainderman comes into pos-

session of his estate, is that which he receives at its value when he receives it. Nevertheless, despite past interpretations of the plain language of section 3, the Commonwealth, in direct conflict with its prior practice and policy and its own acknowledged and accepted recognition of what the taxing statute does and does not permit it to do, in applying the language of section 3, attempts, when taxing remainder estates, to introduce the language of section 2 and, claiming that a Federal estate tax is not a proper deduction in fixing the value of a taxable estate, thereby adds such tax, once paid on the entire estate, to the *value* of the remainder interest.

The argument that in this case we are concerned with "deductions" and therefore the rule of strict construction of a taxing statute does not apply is without merit. The Commonwealth attempts to add something to the value of the estate being taxed. The taxpayer does not claim a deduction. If there is any reasonable doubt about his position, the statute must be strictly construed in his favor and most strongly against the taxing authorities: Paper Products Company v. Pittsburgh, 391 Pa. 87 (1958).

Nor are we concerned over the Commonwealth's fear that there will be a lack of uniformity of taxation if the new policy is not sustained. Two classes of taxpayers inheriting decedents' estates were provided for by the legislature. There is no lack of uniformity in taxing these classes differently.

The Commonwealth attempts to secure by court decision that which it admittedly has heretofore known to be a result that only the legislature could bring about. By stipulation the record of this case includes documents concerning an effort made by the Secretary of Revenue and the Attorney General to amend section 3. We consider the data relevant to the determination

of the issue and indicative of the heretofore unanimously held interpretation of that section.

In March 1951, the Secretary of Revenue sent to the Attorney General the draft of a bill, the purpose of which was to tax all estates without any allowance or deduction for the payment of inheritance, estate or succession taxes. The Attorney General transmitted the draft to the majority floor leader of the House of Representatives as a bill sponsored by the Department of Revenue. The bill was introduced into the legislature on May 21, 1951, given House Bill No. 1361, and referred to the Committee on Ways and Means. No subsequent action thereon was taken by the legislature.

The significant feature of the bill was the attempted addition to, or insertion in, section 3 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, following the clause hereinabove quoted, of a new sentence reading as follows:

"In computing the value of any life estate, estates for years, or remainder interests, there shall be no reduction in the value of the estate by reason of any amount paid for inheritance, estate or succession tax to the Commonwealth, the Government of the United States, or to any other state or territory or country."

In October 1951, a report by the Secretary of Revenue to the Bureau of County Collections respecting various bills then pending in the legislature said that House Bill No. 1361 was "necessary in order to prevent the loss of tax to the Commonwealth", and that "this bill supplements, clarifies and strengthens the provisions of Section 2 of the Act of June 20, 1919, P. L. 521."

All of this indicates unmistakably that the taxing authorities and their counsel were well aware that only by statutory change could remainder interests be taxed in the manner and to the extent attempted in the

instant case. They failed in the attempt. The bill died in committee. The legislature apparently did not choose to change the law.

The law remains as it had been. When, as here, the remainderman elects to pay the tax only upon coming into possession of his inheritance, he can not be compelled to pay such tax on a value upon which is superimposed the amount of any Federal estate tax that has been paid.

It is not necessary in the light of the language of the act, of the court decisions and of the administrative interpretations of long standing, to inquire into the legislative intent. Were it to be examined because of any actual lack of clarity in the language it employed in 1919, quite readily it would be ascertained that the legislature had in mind the interpretation put upon the act throughout the period ending when the policy of the taxing authorities was reversed.

Twice during that period, in 1939 and in 1943, section 3 of the act was amended, but it was not amended with respect to the matter now before us. These facts throw light on the legislative intent.

The legislature is presumed to know the interpretation which the administrative department of the State government put upon the act. It continued the act in force without any amendment such as now sought in 1951. The legislature must therefore be considered as having been satisfied with and having adopted the interpretation made over the decades by the administrative department: Commonwealth ex rel v. Beamish, 20 D. & C. 324 (1933) at page 327.

The Commonwealth's present effort to accomplish by court decision what may be accomplished only by legislative enactment cannot succeed. We accordingly support the conclusions of the learned hearing judge, and dismiss the exceptions filed by the Commonwealth.