## Simpson Estate

*Wisler, Pearlstine, Talone & Gerber*, for accountant.

*Richard N. Spare*, Special Assistant Attorney General, for Commonwealth.

TAXIS, P. J., December 1, 1965.—The first and final account of Montgomery County Bank and Trust Company (now, by merger, Continental Bank and Trust Company), substituted trustee for G. Edna Simpson, was examined and audited by the court on November 5. 1965.

A problem concerning liability for additional inheritance taxes has been submitted to the court. Decedent died on May 7, 1945. By item II of his will, he created a trust for the maintenance, support and care of G. Edna Simpson, his daughter, including therein a right in his trustee to invade principal. He gave any sums unexpended for that purpose at her death to his heirs-in-law as of the time of the death of G. Edna Simpson. On March 26, 1946, the estate was appraised at $4,960.25 for inheritance tax purposes, $2,417.60 being allocable to the life estate and the balance to the remainder interest. On April 22, 1946, the sum of $99.21, being tax at two percent on the entire estate, was paid, and of this amount $48.35 was credited to the two percent tax due on the life estate, and the balance of $50.86 was set up as a "credit for remainder", according to an undated summary sheet attached to the inheritance tax file of the estate. In addition, the official appraisement contained the following language: "Provision: Should any portion pass to collateral heirs, an additional tax of 8% will become due".

G. Edna Simpson died on June 5, 1965, and the balance of the trust is now distributable to collateral heirs. The taxable value of the remainder interest has been appraised at $18,828.98, and to this trustee makes no objection, and it has paid additional tax on this amount at the rate of eight percent. However, the

Commonwealth claims tax at the rate of 10 percent, and the inheritance tax certificate indicates a deficiency of $325.72, this being the additional two percent, less credit for the $50.86 paid in 1946.

An inheritance tax appraisement is conclusive unless appealed from, if it purports to be a final determination of the value of the property appraised and the rate of tax assessable: Darsie Estate, 354 Pa. 540; Reynolds Estate, 359 Pa. 616. This is so even though subsequent developments make it clear that a mistake in judgment was made: Heberton Estate, 351 Pa. 564. In the present case, although the reference to eight percent cannot be to a tax rate, it is not without meaning, since it presumptively was obtained by subtracting the two percent tax on the entire estate paid in 1946 from the 10 percent which would be due in the future on any distributions to collaterals.

The Commonwealth first argues that two references on the appraisement to a "2-10%" tax rate constitute sufficient reservation of a right to tax at 10 percent at the present time. However, as was the case in Schmidt Estate, no. 51,064, in this court, adjudication dated November 8, 1965, this language is not a reservation of the right to levy additional taxes, but only a statement of the tax rates applicable at that time.

The Commonwealth then contends that most of the cases establishing the rule that an appraisement is final and conclusive deal with the right to collect additional taxes when no right whatever to do so was reserved. While this may be so, the relevant holding of the appellate courts is that an appraisement as filed is final as to tax rate, unless it clearly and positively indicates otherwise, and this is as true when a rate is stated as when one is not. In this estate, the Commonwealth elected to allow credit for taxes already paid in terms of the rate to be applied in the future, instead of in dollars, and the fact that this has now

turned out unfavorably to it cannot disturb the applicable rules. I hold, therefore, that the transfer inheritance tax has been paid in full. . . .

And now, December 1, 1965, this adjudication is confirmed nisi.