## Sadler's Estate (No. 2).

Argued November 17, 1955. Before Stern, C. J., Stearne, Jones, Musmanno and Arnold, JJ.

*Edwin M. Blumenthal,* with him *Ralph S. Snyder,* Deputy Attorney General, and *Herbert L. Cohen,* Attorney General, for appellant.

*Hermas Weary,* with him *Weary, Hess & Humer,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 4, 1956:

The appeal is by the Commonwealth from a decree of the Orphans' Court of Cumberland County sustaining an appeal from the assessment of a transfer inheritance tax by the Register of Wills.

The uncontroverted facts are stated in the opinion of the court below as follows: "On June 28, 1948 Horace T. Sadler and Helen B. Sadler, his wife, entered into written articles of agreement for the sale of the Sadler Mansion and grounds known as 'Thornewold' to the Old Folks' Home of the Potomac Synod of the Reformed Church in the United States, hereinafter referred to as the Church. The sales price was $100,000., of which $10,000. was paid upon the signing of the agreement. The sellers reserved the right to the 'use and occupancy of the premises as long as either shall live and shall desire to use and occupy the same.' The balance of the purchase price was to be paid at the rate of $5,000. per year while the sellers remained in

possession, and $10,000. per year upon the removal of the sellers. Payments in no event were to exceed $100,-000., and no interest was payable on unpaid balances. Upon the death of both of the sellers before payment was completed, the unpaid balance was to be cancelled and the sellers agreed that they would direct their executors to cancel the indebtedness in such manner as the buyer might require.

"The agreement further provided for the delivery of a deed in escrow to the Farmers Trust Company to be held until the payments had been completed or both sellers had died, in which event the deed was to be delivered to the buyer. Taxes and insurance were payable by the buyer. So long as the sellers occupied the property they bore the cost of upkeep and maintenance and buyer was entitled to inspection only upon sellers' permission.

"Horace T. Sadler was born February 2, 1879 and Helen B. Sadler on November 28, 1876.

"In conformity to the agreement, a general warranty deed for the premises was executed on June 28, 1948, containing a reservation of a life estate to the grantors and the survivor of them.

"Helen B. Sadler died May 17, 1950. Horace T. Sadler continued to live at Thornewold until November 1, 1951 at which time he removed therefrom, turned the keys over to the buyer and sold most of the contents of the mansion to the church. Thereafter, the church placed its own caretakers upon the premises and retained an architect to draft plans for alterations to convert the mansion into a home for the aged. No alterations were made, however, until after Dr. Sadler's death, which occurred, testate, on February 27, 1953. The deed was delivered by the escrow agent to the grantee and by it placed of record on July 3, 1953.

"At the time of Dr. Sadler's death, the church had paid $37,500. under the terms of the agreement. In the list of assets filed, the personal representative did not include Thornewold as an asset. The State Inheritance Tax Appraiser filed his appraisement which was identical with that of the personal representative except that he added to his total the sum of $62,500, which represents the difference between the purchase price of Thornewold of $100,000 and the amount already paid of $37,500.

"The Farmers Trust Company, administrator d. b. n. c. t. a. of the estate of Horace T. Sadler, filed an appeal from the inclusion of this amount in the appraisement. The foregoing facts have been stipulated, the matter has been argued and is now before us for decision."

A transfer inheritance tax is imposed by the Act of June 20, 1919, P. L. 521, Art. I, Sec. 1, as amended by the Act of May 11, 1949, P. L. 1083, Sec. 1, 72 PS 2301, providing as follows: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident, or is of real property within this Commonwealth . . . by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

The learned court below ruled that no transfer inheritance tax may be imposed since the husband and wife parted with and conveyed their interest, title and enjoyment in the land in their lifetime and hence the transfer was not intended to take effect in possession and enjoyment at or after their death. The Commonwealth, on the contrary, contends that while the *form*

of the agreement is that of a sale, in essence the transaction constituted a gift because the donee was not to acquire possession and enjoyment until after the death of both the husband and wife.

As we view this highly technical and *sui generis* situation, the controlling clause is section 6 of the articles of agreement which reads: "6. DEATH OF SELLERS: In the event that both of the Sellers shall die before the payment for the property shall be completed, such unpaid balance shall be cancelled and the Sellers covenant and agree that they will by Will direct his, her, or their executors to cancel such indebtedness in such manner and by the execution of such documents as the Buyer shall require."

When the surviving husband died the Church had paid $37,500 on account of the $100,000 purchase price, leaving an unpaid balance due of $62,500. It was the payment of this sum which was cancelled and discharged under the terms of the written agreement and the delivery of the escrow deed. The tax assessed by the Register is upon this unpaid and cancelled indebtedness.

The forgiving of the debt, in the circumstances of this case, constitutes a gift. Had the debt not been cancelled the fund would have formed part of the husband's estate. In *Schwarz v. Philadelphia,* 337 Pa. 500, 12 A. 2d 294, Mr. Justice STERN (now Chief Justice) said (p. 507) : ". . . a debt may be forgiven by way of a gift. . . ." See also: *Wentz v. Dehaven,* 1 S. & R. 312, 317; *Zeigler v. Eckert,* 6 Pa. 13; *Livingood's Estate,* 167 Pa. 191, 194, 31 A. 550; *Fassett's Appeal,* 167 Pa. 448, 31 A. 686; *Paige v. Paige,* 53 Pa. Superior Ct. 311, 315; *McKean Estate,* 159 Pa. Superior Ct. 409, 412, 48 A. 2d 74. Where a debt is cancelled, either by will or contract, under the facts recited, the gift is subject

to transfer inheritance tax: *Tyson's Appeal,* 10 Pa. 220. See Annotation 157 ALR 964 et seq.

Since the cancellation of the debt without consideration was a transfer ". . . *by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after . . . death"* (see Act of June 20, 1919, supra) the appraisement was properly made by the Register.

The decree of the Orphans' Court sustaining the appeal from the Register in assessing the fund for transfer inheritance tax is reversed, and the appeal from the Register is dismissed. Costs to be paid by appellee from the estate.