Jones Estate.

Argued October 3, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

re-argument refused December 11, 1957.

*C. E. Brockway, Sr.,* with him *P. E. Brockway, Jr.* and *Brockway and Brockway,* for appellant.

*Ralph S. Snyder,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, *Bernard Goldstone* and *Routman, Moore & Goldstone,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, November 11, 1957:

This appeal presents a solitary issue: in the absence of any docket entry in the Register of Wills' office evidencing a final inheritance tax appraisement by the Commonwealth, is the statutory 60 day period for an appeal from the appraisement tolled?

Hugh O. Jones, a resident of Mercer County, died March 4, 1950. Letters testamentary in his estate were issued to the First National Bank of Sharon, Pa., and C. B. Lartz.

On May 14, 1951 the executors filed an inventory and appraisement listing real estate valued at $34,750, personalty valued at $18,578.61, or a total of $53,328.61. In supplement thereto, on July 24, 1951 the executors filed another statement of assets showing realty valued at $49,600, personalty valued at $18,580.61, or a total of $68,180.61. In further supplement thereto, on July 26, 1952, the executors filed another statement of assets showing realty valued at $35,250, personalty valued at $18,580.61, or a total of $53,830.61. On the same day another supplemental statement of assets was filed listing other real estate valued at $2,250.[1]

Prior to July 26, 1952, the executors filed the required reports with the inheritance tax officials listing real estate valued at $36,850, personalty valued at $18,578.61, or a total value of $55,428.61, and claiming deductions in the amount of $19,298.12.

On July 26, 1952 the Commonwealth's inheritance tax appraiser appraised the estate's assets. In this appraisement the taxing authorities accepted the value of the personalty and the deductions as listed and claimed by the estate; however, the real estate was appraised at $47,000—an increase over the estate's value of $36,-850—resulting in an increase in the amount of inherit-

---

[1] This appraisal is not presently in issue.

ance tax over and above that acknowledged by and paid, at least in part, by the estate.

*No appeal was ever taken from this appraisement and the assessment of the tax by the Commonwealth.*

The Commonwealth maintains that on July 26, 1952 a final tax appraisement was filed in the Register of Wills' office; that on August 18, 1952 the attorney for the estate was duly notified of the filing of this appraisement; that again on September 10, 1952 the attorney was notified not only of this filing but also of the finality of this appraisement. Appellant (surviving executor of the estate) contends that even though the appraisement may have been in the Register of Wills' files on July 26, 1952, the docket entries therein do not show the filing of any such appraisement and, in the absence of any such docket entry,[2] an appeal could not be perfected from the appraisement.

On April 5, 1956 the Commonwealth presented a petition in the court below to enforce payment of the unpaid inheritance tax. After an answer and supplemental answer were filed on behalf of the estate, and, after hearing, the court below granted the Commonwealth's petition and directed payment of the inheritance tax calculated on the basis of the final appraisement filed on July 26, 1952.

Section 13 of the taxing statute,[3] as amended, provides, inter alia: "Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within sixty days, to the orphans' court,

---

[2] The testimony indicates that under the practice in the Mercer County Register's office no entry as to taxation was made on the docket until the tax was fully paid.

[3] Act of June 20, 1919, P. L. 521, art. II, §13; Act of June 22, 1931, P. L. 689, §1; Act of July 15, 1935, P. L. 1028, §1; Act of May 27, 1943, P. L. 757, §3; 72 PS §2327.

on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. . .".

Appellant argues that the 60 day period provided in this statute begins to run when and only when an appraisement is formally entered on the docket of the Register of Wills and that, absent such entry, no appeal will lie. Appellant, conceding that there is no specific statutory requirement that the tax appraiser file his return with the Register of Wills, relies upon Section 14 of the taxing statute, as amended, supra (72 PS §2341), and Section 13 of the Register of Wills Act,[4] to support its contention that such a return must be filed and docketed by the Register of Wills.

Section 14 of the taxing statute, supra, provides: "The register of wills shall enter in a book, to be provided at the expense of the Commonwealth, which shall be a public record, the returns made by all appraisers appointed by him under the provisions of this act, opening an account in favor of the Commonwealth against each decedent's estate. The register may give certificates of payment of such tax from such record. The register shall transmit to the Auditor General, on the first day of each month, a statement of all returns made by appraisers during the preceding month, upon which the taxes have been paid or remain unpaid, which statement shall be entered by the Auditor General in a book to be kept for the purpose."[5] Neither in this statute nor in its predecessor[6] is any specific provision

---

[4] Act of June 7, 1917, P. L. 415, §13, 20 PS §1941, repealed by Act of June 28, 1951, P. L. 638, art. VI, §601.

[5] It is to be noted that originally the tax appraisers were appointed by the Register of Wills but are now appointed by the Secretary of Revenue: Act of May 4, 1927, P. L. 727, §2; Act of May 21, 1943, P. L. 370, §1; 72 PS §2325.

[6] Act of May 6, 1887, P. L. 79, §12.

made for any notice of the appraisement to be given to the taxpayer.

The purpose of Section 14, supra, is two-fold: (1) to provide a method of correlating the records of paid and unpaid inheritance taxes between the offices of Registers of Wills and the Auditor General, and (2), possibly, to provide a method for public notice of paid and unpaid inheritance taxes.[7] Section 14 is clearly inapplicable to the instant situation. In the first place, the section contemplates the recordation of the appraisers' returns *after* and not *before* settlement of the tax. In the second place, the public notice which arises from recordation of the returns for taxes is clearly insufficient as to a taxpayer as distinguished from the public generally. This Court has unequivocally held that notice to the taxpayer must be *actual* and *specific* and that "notice of the filing of the appraisement is necessarily implied in the right of appeal given by the statute [Act of 1887, supra], and the thirty days' limitation of the right begin only from such notice:" *Belcher's Estate*, 211 Pa. 615, 618, 61 A. 252. See also: *Handley Estate*, 181 Pa. 339, 348, 37 A. 587. Had the Register complied in all respects with Section 14, supra, and docketed the appraiser's return, such docketing would not be equivalent to the notice which our courts require be given by the Commonwealth to the taxpayer.

Section 13 of the Act of 1917,[8] supra, provides: "It shall be the duty of the registers of wills of the several counties of this Commonwealth to record all inventories and appraisements of the estate of any decedent, filed in the office of the register of wills by the execu-

---

[7] For instance, such a recordation of the payment or non-payment of these taxes is most important to a title or lien searcher. Cf: Act of April 9, 1929, P. L. 343, art. VII, §724; 72 PS §724.

[8] This Act was in effect when decedent died.

tor or administrator of any such decedent's estate, in a book to be provided for that purpose; and the same shall be indexed by such register of wills in an index book provided for that purpose; . . . ." Section 502 of the Register of Wills Act of 1951[9] provides: "The register shall index and record all inventories and appraisements filed with him. . . ." Obviously, the "inventories and appraisements" referred to in both statutory provisions are the "inventories and appraisements" required to be filed by a personal representative under the Fiduciaries Act of 1917, §442 (Act of June 7, 1917, P. L. 447, §11a, 20 PS chap. 3, App. §442) or its successor (the Fiduciaries Act of April 18, 1949, P. L. 512, art. IV, §401, 20 PS §320.401) and not the appraisements made by the Commonwealth for inheritance tax purposes. Both provisions are clearly inapposite.

An examination of the record indicates that the Commonwealth filed its tax appraisement on July 26, 1952 and the appraisement bears the notation "Filed in the Register's Office, July 26, 1952."[10] The record of appraisement which contains this notation is a public record. It is entitled, therefore, to the benefit of the well-established presumption that public records are valid and correct and that the official acts involved in their preparation have been properly performed: *Cameron Estate,* 388 Pa. 25, 37, 130 A. 2d 173; *Tremont Township School District Appeal,* 366 Pa. 404, 409, 77 A. 2d 403; *Fleming et al. v. Adamson et al.,* 321 Pa. 28, 37, 182 A. 518, 522; *Vernon Township et al. v. United Natural Gas Co.,* 256 Pa. 435, 439, 100 A. 1007.

---

[9] Act of June 28, 1951, P. L. 638, art. V, §502, 20 PS §1840.502. This Act was in effect when the appraisement was made and filed. Comment under this section of the Act is significant: "This is suggested by Section 13 of the 1917 Act."

[10] See: *Webster's Estate,* 314 Pa. 233, 235, 171 A. 568.

On August 18, 1952 the Register of Wills gave written notice (a form) to the attorney for the estate that the inheritance tax appraisement had been filed on July 26, 1952 showing an appraised value of the realty at $47,000, of the personalty at $18,578.61, and a total appraised value of $65,578.61. This notice further stated that a tax was due the Commonwealth in the amount of $2,338.34 and the attorney's attention was directed to the statutory provision providing for an appeal therefrom. The Commonwealth introduced in evidence the original tax record card in the Register of Wills' office (prepared after an appraisal is final and after the forms of notice are sent out), which indicates the filing of the inheritance tax appraisement on July 26, 1952 and the mailing of notices on August 18, 1952. The record also discloses a letter addressed by the attorney for the estate to the "State Inheritance Tax Appraiser for Mercer County" in which the attorney, acknowledging receipt of a copy of a letter which the tax appraiser had received from Harrisburg wherein the Commonwealth proposed to increase the appraisal, not only specifically referred to the proposed appraisals on each property, but also inquired: "If there has been a formal reappraisal made of these properties, please advise me, as we will file an appeal from the suggested amount. If the appraisal is a statement in a tentative form then I would like to submit the following information." In the same letter the attorney inquired: "Please let me know when the appraisal was finally made so that we may file the necessary appeal." In reply to this letter the tax appraiser on September 10, 1952 advised the attorney, in writing, as follows: "In reply to your letter of August 23rd, concerning the reappraisal of properties in the above estate *the reappraisal is definite and final as far as this Office is concerned.*" (Emphasis supplied) An examination of this correspond-

ence clearly indicates that the attorney for the estate was unequivocally advised of the finality of the appraisement on September 10, 1952.

It is abundantly clear that a final appraisement of decedent's estate by the Commonwealth was made and filed in the Register of Wills' office on July 26, 1952, that notice of the filing of this appraisement was duly given, in writing, both by the Register of Wills and by the Commonwealth to the estate's attorney, and that on September 10, 1952 the attorney was made fully aware of the finality of such appraisement. Appellant's failure to take and perfect an appeal within 60 days of the time of such notice bars it from an appeal from the appraisement. It is well established that when a taxpayer fails to take his appeal within the statutory period, the appraisement becomes final and binding: *Reynolds Estate*, 359 Pa. 616, 60 A. 2d 57; *Darsie Estate*, 354 Pa. 540, 47 A. 2d 815.

Order affirmed.