## Castner Estate

208

*Alan Reeve Hunt* and *Duane, Morris & Heckscher*, for appellant.

*Irvin Stander*, Special Assistant Attorney General, for Commonwealth.

BURKE, J., January 26, 1962.—This is an appeal by Helen Schreiber Johnson, remainderman by virtue of the exercise of a power of appointment under testator's will by the life tenant, from assessment of transfer inheritance tax.

Testator died on March 3, 1929, and by his will bequeathed his residuary estate to his trustees, to pay the income therefrom equally to his two sons, Samuel J.

Castner and Philip A. Castner, for life, and upon each of their deaths to pay the principal on which he had received income to such person or persons as he may by last will limit and appoint.

Samuel J. Castner, life tenant, relinquished the general power as to his half of residue, reserving only his right to appoint the sum of $12,000 to any person. He died on February 27, 1960, and in his will exercised the power so restricted by appointing the sum of $12,-000 to Helen Schreiber Johnson, appellant herein, whose legacy would normally be subject to the collateral tax of 10 percent.

The appeal is taken from the action of the Commonwealth in making what it calls a "remainder appraisement" for inheritance tax purposes on the $12,000 gift at the 10 percent rate, less a credit as hereinafter discussed. The position of the Commonwealth in making the remainder appraisement is that the original appraisement was founded on the appraiser's blindly accepting the total balance of the principal personalty as reflected in the adjudication.

In so doing the appraiser did not record by item, each asset with its valuation opposite the inventory value on the appraisement form, as prescribed by the printed instructions to the appraiser which appear on the form. For this reason the Commonwealth claims that the original personalty appraisement was null and void, not because of any deficiency in the total valuation, but rather the method by which it was reached, hence it is free to make another appraisal under which it could recover the difference between the 10 percent rate and the taxes paid in 1930 on a $12,000 valuation at two percent. In reality it does not presently make another appraisal, but adopts the very document it repudiates. Its action is addressed to form rather than substance.

By stipulation of counsel it is agreed that the inventory and appraisement, filed in the office of the register of wills, shall be considered a part of the record.

The parties also stipulate, inter alia, that the calculation of the taxes allegedly due shall not be deemed as an admission by appellant that any additional tax is due under the remainder appraisal filed.

The record of this estate reveals that the executors, on May 27, 1929, within three months of testator's death, in pursuance of the Act of June 20, 1919, P. L. 521, section 15 as amended, 72 PS §2351, filed an inventory and appraisement of the personalty of the estate with the register of wills.

On October 31, 1929, the executors filed their account which was called for audit before Thompson, J., on December 2, 1929, and was confirmed nisi on December 20, 1929, and absolutely on January 6, 1930. At the audit the Commonwealth was represented by counsel.

On January 14, 1930, the executors filed an affidavit with the register of wills, listing the real estate holdings of the testator, setting forth the value of each parcel, as required by section 17 of the said statute, 72 PS §2353.

On January 22, 1930, the register of wills appointed an appraiser to make an appraisement of the realty, and on January 29 he appointed an appraiser of the personalty as prescribed by the said statute, section 10, 72 PS §2321, which recites the duties of the appraisers of personalty as follows:

"The register of wills of the county . . . shall appoint an appraiser, . . . Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life-estates growing out of said estates, upon which an-

nuities and life-estates the tax imposed by this act shall be immediately payable out of the estate at the rate of such valuation."

The returns of the appraisements of personalty and realty were made on January 29, 1930, and January 22, 1930, respectively. The appraisement of the personalty is stated as

"Balance of Personal Estate as shown by Adjudication No. 3321 Oct. 1929       533,211.30
    "Tax 2% $10,664.23

"Balance of Personal Estate as shown by Adjudication No. 3321 Oct. 1929       34,000.00
    "Tax 10% $3400.00

   "Total tax $14,064.23."

The Commonwealth has no dispute with the appraisement of the realty.

At this point it is pertinent to note that the executors have fully performed all the duties imposed on them by statute with respect to making a full disclosure to the Commonwealth of all the assets with their individual valuations and all items of credit. There were no omitted or later discovered assets, and no appeal was taken from the appraisement, which stated the clear value on which the tax was paid on January 30, 1930, including the tax on the full remainder at two percent.

On the subject of the finality of an appraisement this court said in Borie's Estate, 13 D. & C. 355, at 357-58:

"Thus when the executors presented the assets and credits (actual and estimated) of this estate for appraisal, and, in pursuance thereto, the appraiser determined and appraised the clear value of the estate at . . . and assessed the tax, which appraisement and assessment were unappealed from and the tax paid, so far as both parties were concerned, the tax matter was closed and the matter concluded."

The Commonwealth's case is based on the speculation that the appraiser gave no consideration to and made no determination of the value of each asset, merely because the filed appraisement does not show the complete composition of the assets. Adverting again to the statutory duty of the appraiser, hereinbefore quoted, it only requires that he "make a fair, conscionable appraisement of such estates and assess and fix the cash value of all annuities and life-estates. . . ."

The statute directs him to appraise the estate, and his only duty with respect to any component parts of the total estate is to fix the values of annuities and life estates. The latter determination is essential because the fiduciary is not required to pay the tax on the remainder until the termination of the life estate. The Commonwealth wants to substitute the detailed instructions to the appraiser for those set forth in the statute. The Commonwealth, in essence, would impose the duty on the executors of overseeing the appraiser in the execution of his duties. This is, indeed, a novel view, because the taxpayer has no privity with the appraiser.

The Commonwealth offered no evidence tending to establish the detailed activities or omissions of the appraiser of the personalty supporting the valuation of the taxable estate as shown on the appraisement.

The appraisement form carries the following printed text:

"Valuation of the Real Estate of . . . late of PHILADELPHIA, in the County of PHILADELPHIA, deceased, and Appraisement of the Personal Estate, goods, Chattels and effects of said decedent, and Assessment of the Cash Value of all Annuities and Life Estates growing out of said Estate; together with the values fixed by the inventory filed by the legal representative of the decedent."

It is admitted that, while the will makes provision for life estates, no separate valuations for them are shown on the face of the appraisement. However, inasmuch as the tax was paid on the entire value of the estate on the day following the date of the appraisement, the valuations of life estates would have been useless. The law never requires the performance of a nugatory act.

In Jones Estate, 390 Pa. 599, the question was presented as to the tolling of the appeal period from a final inheritance tax appraisement by reason of the absence of a docket entry in the register of wills office. The appraisement bore the notation: "Filed in the Register's office, July 26, 1952".

The following language of the opinion at page 604 is apposite:

"The record of appraisement which contains this notation is a public record. It is entitled, therefore, to the benefit of the well-established presumption that public records are valid and correct and that the official acts involved in their preparation have been properly performed." See cases cited therein.

The Commonwealth's "remainder appraisal" is illusory since it takes exception to the original appraisement, but is actually directed to the recovery of the difference between the 10 percent tax rate and the two percent paid on the residuary gift within one year of testator's death. It is precluded from making a direct claim for the additional taxes, since at the time of the appraisement no reservation was made with respect to the remainder tax. See Heberton Estate, 351 Pa. 564.

Its position is a paradox, because it confirms the original appraisement valuation and in the same breath disavows it in the following manner. A stipulation of counsel recites that the personal and real estate are blended, and computes the present tax claim by

finding the ratio of total personalty, which it disclaims, to the total estate, realty and personalty, and finds the equivalent of the ratio as 95 percent. Such percentage is then applied to the residuary gift of $12,000 providing a taxable base of $11,400, subject to a tax of eight percent (10 percent less two percent) or $912. The Commonwealth's attack on the original appraisement would be less oblique if it now made a valuation of all the assets as of the date of testator's death.

The record in this case negates the Commonwealth's thesis that the appraiser merely adopted the balance as shown by the adjudication. The fact is that the adjudication balance is stated at $569,179.03, whereas the appraiser fixed the taxable personalty at $567,-211.30. The latter figure reflects the elimination by the appraiser of the capital gains and losses, as stated in the account and is indicative of his having made an independent determination of the tax base.

The Commonwealth relies on Noel's Estate, 42 D. & C. 614, in support of its alleged right to file the remainder appraisement. In Noel, the Commonwealth filed an appraisement of remaining assets 25 years after the death of the life tenant. Although the question of the sufficiency of the appraisement was passed upon, the decision was based on the presumption of payment after the lapse of 20 years from the time of the death of the life tenant. Although the life tenant in the instant case died in 1960, the tax was paid on the entire estate in 1930, without any reservation having been made for the determination of the rate of tax on appointed gifts. Notwithstanding that the presumption of payment forecloses the Commonwealth, in the present case the tax was admittedly paid. See Ash's Estate, 202 Pa. 422.

After a lapse of 20 years, there is not only a presumption of payment, but also a presumption that

both the register of wills and the executor have performed their duties. The Commonwealth, like all other suitors, must meet the burden of proof, and is subject to the presumption of payment from the lapse of time.

In Reynolds Estate, 359 Pa. 616, the conclusiveness of the filing of an appraisement, and the assessment of the tax rate was discussed at page 620, wherein the court said:

"When an appraisement and assessment purport to be a final determination of the value of the *property appraised* and the *rate assessable*, the assessment and appraisement are conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment had been made either as to the *value* of an asset or the *rate* of tax." See Heberton Estate, supra.

It is inconceivable that an executor, after having met every statutory requirement by way of giving the Commonwealth full information on the assets of an estate, and paying the tax on the original assessment in full, should, after the lapse of 31 years, be asked to pay an additional tax.

I find as a fact that the Commonwealth on January 29, 1930, made a final appraisement of decedent's personal estate, assessed the tax due thereon, in accordance with the appraisement, and accepted from the executor the tax imposed. It is therefore now precluded from making another appraisement.

In Rowell's Estate, 315 Pa. 181, at page 183, the court said:

"If this is a final appraisement, *as it appears to have been intended to be,* it ends the present controversy, for a second appraisement is without authority in law: Moneypenny's Est., 181 Pa. 309." (Italics supplied.) See Darsie Estate, 354 Pa. 540.

If we assume arguendo, that the taxpayer paid a tax at the two percent rate on the life estate, and a 10 per-

cent tax on the remainder, under the conjecture that the remainder would be appointed to collaterals, the taxpayer, upon learning after the expiration of the two year rebate period that the remainder passed to lineals, could not sustain a rebate of the excess payment. Fidelity-Philadelphia Trust Co. v. Board of Finance and Review, 62 D. & C. 127. In a proceeding of this character the Commonwealth and the taxpayer are in pari causa.

I accordingly make the following

*Decree*

And now, January 26, 1962, for the foregoing reasons the appeal of Helen Schreiber Johnson, remainderman, from the appraisement by the register of wills, is sustained, and the appraisement is stricken off.