## Alexander Trust

*Catherine G. Barone,* Assistant Attorney General, for Commonwealth.

*Harold E. Martin,* for trustee.

*Stein, Storb, Mann & O'Brien,* for charitable remaindermen.

*Marshall M. Cohen,* for trust.

BROWN, J., March 21, 1974.—Before the Court is the issue of payment of Pennsylvania inheritance tax on the estate of Ross C. Alexander on the interests of six Mennonite Churches in Lancaster County who are remaindermen in an inter vivos trust created by decedent, Ross C. Alexander, by instrument of April 17, 1954. Also to be decided if such tax is due, is the correct date for determining the value of 8,000 shares of Armstrong Cork Company capital stock. A brief history of the factual situation is necessary in order to place the matter in proper perspective.

Ross C. Alexander died on May 29, 1961, a resident of Lancaster, Pa. He had executed an irrevocable inter vivos deed of trust dated April 17, 1954. This trust was not funded at the time of its creation. The trust provided that the corpus was to be funded from proceeds received on vesting of the future interest which the settlor had in a one-sixth interest in a testamentary trust created by one Mary Dodge. Mary Alexander Dodge, a New York resident, died testate on July 25, 1951. In her will she created a testamentary trust with a life estate in her sister and vested remainders in six nieces and nephews. One of the nephews was Ross C. Alexander. The trust res was a future interest because the life tenant of Mary Dodge's testamentary trust was still living at the time the inter vivos trust was created. Ross C. Alexander, as stated above, died May 29, 1961, and since Mary Dodge, the creator of the New York trust, died July 25, 1951, and Iowa Alexander, the life

tenant of the New York trust, died December 18, 1971, it appears that Ross C. Alexander never benefited in his lifetime from the remainder of the Mary Dodge trust. At the time of the execution of the instant trust in 1954, the Pennsylvania inheritance tax act had no provision for charitable exemptions which did not occur until 1957. The Department of Revenue of the Commonwealth of Pennsylvania has taken the position that the trust of Ross C. Alexander was irrevocable when created in 1954 and, hence, the 1954 law controls and, therefore, the charitable remaindermen, the six Mennonite Churches, are subject to a 15 percent inheritance tax.

The instant trust provided that the settlor, Ross C. Alexander, was entitled to the income for his life. Article 5 of the trust provided that in the event the income from the trust funds was "in the sole and exclusive judgment of the corporate trustee" (the Lancaster County National Bank, now the National Central Bank) insufficient to provide for "proper maintenance, support, medical or dental care and attention, hospital, nursing care or education of the donor," the trustee was given the power to invade principal. The trust also included spendthrift provisions. Article 13 contained a unique provision that should donor marry and/or have lawful descendants, then, in such event, the trustee, if "directed" by the donor, "and if deemed advisable by the trustees, of which advisability they shall have the sole and absolute discretion, shall pay as directed therein to said wife and/or lawful descendants, . . . all or any part of the income of said trust fund, but not exceeding" $5,000 per year, and further that "the corporate trustee alone, if it deems advisable and necessary, in its sole and absolute discretion, without the necessity of the consent, joinder and approval of the individual trustee, shall pay to the said wife and/or

lawful descendants . . . , a principal sum sufficient to make up the difference between the amount of the annual income received by all of them, and the sum of Five Thousand Dollars ($5,000.00) per year. . . ."

By Article 8, the trust itself was expressly made irrevocable by the donor. The pertinent part of this article reads "that it (the trust) shall hereafter stand without power any time to revoke it or annul any of the provisions herein contained," except the right to transfer additional assets to the trust. As stated above, Ross C. Alexander died some ten years before the future interest vested in possession. The life tenant of the testamentary trust of Mary Dodge died on December 18, 1971, at which time the one-sixth remainder interest owned by decedent, Ross C. Alexander, became payable to the trustees into the inter vivos trust. By decree dated June 29, 1972, of the Surrogate Court of Rensselaer County, N. Y., there was awarded to the National Central Bank, the sole surviving trustee of the irrevocable living trust of Ross C. Alexander, 8,000 shares of the capital stock of the Armstrong Cork Company and $40,017.83 in cash. The stock was not received by the said National Central Bank until August 7, 1972.

Several issues have been posed. First, whether the trust created by Ross C. Alexander was revocable or irrevocable. Second, assuming the trust was irrevocable, then whether or not the charitable remainder interests are entitled to charitable exemption under the Charitable Exemption Act of May 28, 1956, P. L. (1955) 1957, as amended, 72 PS §2301.1, and incorporated into the 1961 taxing statute. Third, whether the stock should correctly be valued on the date of death of the life tenant of the Mary Dodge testamentary trust, or the date of the decree of the New York court awarding the interest to the Lancaster, Pa.,

corporate and only remaining trustee of Ross C. Alexander's inter vivos trust?

The Commonwealth contends the trust created by Ross C. Alexander on April 17, 1954, was an irrevocable trust. The trust agreement itself specifically states in Article 8 that said trust shall be irrevocable. The precise issue can be stated as whether the conditional right in the donee to subsequently create a life estate in the income to any wife should he subsequently marry, and/or any descendants he might subsequently have as a result of said marriage, changes the nature of the irrevocability of the trust for purposes of Pennsylvania inheritance tax. In determining this question, it must be kept in mind that this decedent had no absolute right to alter, change or amend any of the provisions of this trust. The settlor merely retained a right to direct and provide the trustees to pay the income to his wife and consume a portion of principal in the event the interest in any one year did not reach $5,000. This power was not the donor's alone. The absolute and sole discretion as to whether the income would eventually be paid to a wife vested solely within the trustee. The wording of Article 13 indicates the very limited nature of the power this donor had to alter, amend or change the incidents of this trust.

It is clearly established in Pennsylvania law that, in the absence of an express power of revocation, an inter vivos trust instrument is construed to be irrevocable where the intention of the grantor was clearly to part with legal title to the assets transferred to the trust. This is true even though the enjoyment of the estate so far as the ultimate beneficiaries are concerned is postponed until the death of the settlor: 6 Hunter O. C., pp. 88, 105, §11(b), See Wilson v. Anderson, 186 Pa. 531; Potter v. Fidelity Ins. Tr. & Safe Dep. Company, 199 Pa. 360. The criteria to deter-

mine whether an inter vivos transfer is revocable or irrevocable for the purpose of the transfer inheritance tax statute is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor *but* whether the donor has irrevocably parted with all his interest, title, possession and enjoyment during his lifetime: Todd Trust, 358 Pa. 530, 58 A. 2d 135.

Under the 1919 inheritance statute, the retention of income for life by the settlor of a trust is sufficient to subject the irrevocable inter vivos transfer to inheritance tax in decedent's estate upon his death. The Act of June 20, 1919, P. L. 521, sec. 1(c), 72 PS §2301.1(c), provides for the assessment of inheritance tax upon the transfer of property "by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or *intended to take effect in possession or enjoyment at or after such death.*" The transfer to this trust was clearly intended to take effect in possession or enjoyment in the remainderman at or after Ross C. Alexander's death within the meaning of the transfer inheritance tax statute of 1919. The Pennsylvania Supreme Court in Glosser Trust, 355 Pa. 210, 49 A. 2d 401 (1946), sets forth the test:

"What is the test to determine whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until at or after the death of the donor? It is clear, from a long line of authorities, that, even though the property has been delivered to a trustee and vested remainders given to the beneficiaries, if the donor himself continues as beneficiary until his death, as by reserving a right to the income during his life, the interest of the remaindermen does not take effect until the donor's death and is, therefore, subject to the transfer inheritance tax." 355 Pa., at 215.

See also Pichel Estate, 406 Pa. 431, 178 A. 2d 762 (1962).

Counsel for the charitable remaindermen relies on the case of Commonwealth v. Linderman's Estate, 340 Pa. 289 17 A. 2d 397 (1941), in support of its position that the instant trust was a revocable trust. In Linderman, supra, the transferor, prior to the Act of 1919, which taxed lineals, reserved to herself the income for life or until remarriage, together with a right to reserve one-third of the corpus if she remarried. She died without having remarried and it was held that one-third of the transferred property was taxable in her estate under section 1(c) of the Act of 1919. Said the court:

"Nor do we think the fact that the settlor did not remarry makes the reservation 'a dead thing' as the court concluded, relying for the quoted words upon an observation in Dolan's Est., 279 Pa. 582, 124 A. 176, where there was an absolute power of revocation unexercised."

Linderman Estate clearly overruled the prior law laid down in Dolan's Estate, supra, and Linderman was followed in Todd Trust, 358 Pa. 530 (1948). In Linderman, supra, the Commonwealth could not tax the two-thirds of trust res irrespective of the fact that decedent had the right to receive the income during lifetime because the transfer itself was an irrevocable transfer and the remainder passed to lineals who were not taxable when the trust therein had been created. At the time of the creation of that inter vivos trust, there was no tax on lineal descendants. Otherwise, to hold a tax applicable would have met constitutional objections. The court did hold, though, that one-third of the trust was subject to inheritance tax because the donor had reserved to herself the right to revoke one-third of the trust corpus in the event she

remarried. The court considered the right she held to terminate as to the one-third interest irrespective of whether or not she had, in fact, exercised that right.

In the Linderman case, it is clear that the donor or settlor had an absolute power of revocation. In the instant case, this donor had no absolute power of revocation. He merely had the right to request the trustee to make payment of the income to his wife had he, in fact, married. Had the instant donor the absolute right in his lifetime or by his will to change the provisions of the trust and grant his wife, had he married, a life interest in the income or so much of the principal as would make up $5,000 per year, we might have a situation similar to Linderman Estate, and the charitable remaindermen might be in a position to argue that decedent had revoked a certain portion of this trust, that is that part to which decedent had the right to alter payment. But, unfortunately for the charitable remaindermen, the settlor in the instant case did not have unlimited or absolute power of revocation. A conditional power of revocation of a portion or all of the trust res is not tantamount to absolute power to alter or amend. Thus, the entire res of the trust created by Ross C. Alexander was irrevocable at the time the trust was created.

Whether the gifts of the remainder one-half interest to the charities in the instant case be held as contingent remainders or vested remainders subject to divestment is not, in the court's opinion, material, since by either interpretation under existing case law, such remainder gifts would not be afforded the exemption from tax under the Charitable Exemption Act.

41 P. L. Encyc. 14, 15 §481, defines "vested" estates or interests as contrasted with "contingent" as follows:

"A vested estate or interest under a will exists when there is an immediate right of present enjoyment or a

present fixed right of future enjoyment. A contingent estate is one as to which either the person who is to enjoy it or the event on which the estate is to arise is uncertain.

"The question whether an estate is 'vested' or 'contingent' is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment since that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. In like manner, the question does not depend upon the defeasibility or indefeasibility of the right of possession, for many estates are vested without possession which are still defeasible. If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate."

Indefeasibility is not regarded as an essential characteristic of a vested estate or interest: P. L. Encyc. 22, §487, gives the following definition:

"A testamentary gift which is otherwise absolute and vested is not rendered contingent by reason of the fact that it is liable to be divested or defeated on the subsequent happening of a contingency. Moreover, a gift is not rendered contingent merely because there is a gift over on the death of the beneficiary before the time for possession or enjoyment; or on the occurrence of his death without issue or lineal descendants, or with issue."

It is the Commonwealth's contention that the gifts to the charities under the instant inter vivos trust were "vested" subject to divestment of some or all of the principal in the event the corporate trustee, within its sole and absolute discretion, heeded the settlor's request in the event of his marriage to pay the income for the life of his widow to her or his descendants. It should be noted that the power in the trustee to create, in effect,

a subsequent life estate in the widow or issue was limited to the income only with the right in the corporate trustee to invade the corpus to the limited extent that the income did not amount to $5,000 per year. The corpus, if any remaining, eventually would be passed unto the named charities. Had the donor married and had issue, with the proviso mentioned heretofore, the vesting in possession of the corpus in the named charities would have been merely postponed. However, such postponement in itself did not, and could not, affect the vested nature of the interest granted to the charitable remaindermen herein.

It is the Commonwealth's further contention that the vested or contingent nature of the gifts to the instant charities is of no moment to determination of the basic issue of taxability. We are not concerned with the taxability of a future interest which never comes into possession, but, instead, we are dealing with the effect of the exemption statute upon occurrences before and after its effective date. The precise issue is not what type of a transfer was involved under the trust, but when the transfer to the charitable remaindermen took place.

Here, the settlor created an inter vivos trust before the enactment of the charitable exemption statute provided an exemption from tax for such gifts. The precise issue is whether such gifts are exempt from tax. Determination depends on resolving *when did the transfer to* the ultimate charities become effective, that is, when the original settlor created the trust or when the settlor died? Assuming that the trust was irrevocable, as previously stated, it becomes evident that the interest or transfer to the charities took place when the trust itself was created.

The charitable exemption statute, Act of 1956, P. L. (1955) 1757, effective June 1, 1957, broadened by

the Act of July 11, 1957, P. L. 821, 72 PS §2301.1, provides:

"No transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise, to persons, corporations and organizations where the transfer is by will or by deed, gift or grant, in contemplation of death, made by a resident of this Commonwealth of property situated within this Commonwealth or elsewhere. . . .

"(a) To or for the use of any corporation, unincorporated association, or society, organized and operated, exclusively, for religious, charitable, scientific, literary or educational purposes."

The Charitable Exemption Act of 1956 has been clearly decided by the Supreme Court to be prospective only, and that the exemption does not apply to transfers that were completed by vesting in the transferee prior to June 1, 1957: Tracy Estate, 403 Pa. 373, 170 A. 2d 93 (1961). The court in Tracy reviewed the underlying principles as to whether the amendment was prospective or retroactive. The opinion cites and quotes from Mayer's Estate, 330 Pa. 39, 198 Atl. 439, 440 (1938), wherein the Supreme Court held that the inheritance tax is a tax on "any transfer under the Act." The court adopted the definition of the term "transfer" as defined in the act, " ' "to include the passing of property, or any interest therein, in possession or enjoyment, present or future." ' "

Under established case law, if we assume the remainder gift to the charities in the instant case was vested when the trust was established, the charities are clearly subject to inheritance tax. (See unreported case, Estate of Clara Schmeiz, Orphans' Court Philadelphia, opinion by Judge Shoyer, October 10, 1972.) There are at the present time several lower court cases

involving contingent remainders in favor of a charity where the contingency in each case was removed after the effective date of the Charitable Exemption Act, namely, June 1, 1957, and where the donor died before June 1, 1957. See Kerr Estate, 26 D. & C. 2d 130 (O.C. York, 1961); Carpenter Trust, 22 Fid. Rep. 397 (Lancaster County, opinion by Judge Appel, May 25, 1972); Blake Estate, 23 Fid. Rep. 19 (Montgomery County, opinion by Judge Taxis, November 17, 1972).

Judge Taxis, in Blake Estate, supra, at page 29, summarizes the present state of the law when he remarked:

"We therefore believe that the state of the law now may be said to be that when a charitable interest, of any sort, first arises or is created or expressed after the effective date of the Act of 1956, it is exempt, but when the same occurs before that date, the transfer is not exempt, regardless of when the gift vests in possession."

We find, therefore, that the charitable remainders now before us are taxable.

In Blake Estate, supra, Judge Taxis had before him a vested charitable remainder although, admittedly subject to divestment had the life tenant exercised her unlimited power to consume principal during lifetime. Therein, Sue Avis Blake died February 2, 1955. In her will, inter alia, she gave her remainder estate to her sister "in trust, to . . . pay the net income therefrom to my said sister, Ruth M. Blake, during the term of her natural life, hereby authorizing and empowering the said Ruth M. Blake also to use and consume the principal thereof to such extent as she shall in her absolute discretion decide and upon her decease, the principal, or so much thereof as shall then remain, I give" to charities. The pertinent issue for present purposes was whether the distributions to the named charities, Cornell University and Bryn Mawr College, were subject to inheritance tax or whether exemption from tax was

afforded under the Moore doctrine. In Moore Estate, 445 Pa. 17, 283 A. 2d 50 (1971), the Pennsylvania Supreme Court held that the "relation back" doctrine, concerning the exercise of a power of appointment, should not be applied in determining inheritance tax liability, under circumstances where a general power of appointment was created prior to the charitable exemption statute, but was exercised in favor of charities after the effective date of the Act. The court, conceding that the Act was prospective only, relying on the decision in Tracy Estate, 403 Pa. 373, determined that the Act should be construed with respect to its evident purpose to "encourage gifts toward charitable and benevolent ends." The court reached its result by rationalizing that the legislature by adopting the exemption statute intended to encourage philanthropy, including a motivation by donees to exercise general powers in favor of charities. The following excerpt from Moore, at page 21, is pertinent:

"When the power of appointment was created in 1954, the eventual appointees had no interest whatsoever in the trust, either present or future, vested or contingent . . . and they did not obtain any legal or equitable interest in the trust until the power's exercise upon Edith Moore's death in 1965. To hold that there was a 'transfer . . . to' the appointees prior to the passage and effective date of the charitable exemption statute would be to ascribe a highly artificial meaning to the statute in the absence of any apparent legislative intent that we do so. We therefore conclude to the contrary that there was no statutory 'transfer . . . to' the appointees until the date of the exercise of the power."

As applied to the instant factual situation, whatever rights the Mennonite Churches acquired to the remainder funds arose when the instant inter vivos trust was created in 1954. Their rights were not depended

upon the death of Ross C. Alexander. Thus, the transfer to the charities occurred prior to the exemption statute and, therefore, are subject to the inheritance tax statute.

The Inheritance Tax Department of Lancaster County valued the 8,000 shares of the capital stock of Armstrong Cork Company as of the date of the death of the life tenant of the Mary Dodge testamentary trust, that is, as of December 18, 1971, at which time the market value of said shares was 42¾ or $383,168.95. The estate reported the market value of the stock as of June 29, 1972, that is, the date of the New York court decree awarding the stock to the instant trustee, at $36.75 per share, thus a difference of $6 per share occurs between the two valuation dates. The issue is what date is the corpus of the inter vivos trust consisting of said shares, representing decedent's one-sixth shares of the testamentary trust of Mary Dodge, to be valued for inheritance tax purposes. Determination of the issue must necessarily depend on the provisions of the Pennsylvania inheritance tax statute applicable at the date of Ross C. Alexander's death, that is, the 1919 Act.

Under the 1919 Act, inheritance or transfer tax on a remainder estate is payable at either of two specific dates at the election of the remaindermen: first, at any time prior to the remainderman coming into actual possession, providing in such cases that the valuation date is the date of payment; and, second, if no election is made to prepay, then payment must be made when the remainderman comes into the right to possession and enjoyment. The "right to possession and enjoyment" for tax valuation purposes has been determined to be the date of the life tenant's death.

Section 3 of the Act of June 20, 1919, P. L. 521, covers the taxing of future interests:

"Where there is a transfer of property by a devise, descent, bequest, gift, or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner,* but the owner may pay the tax at any time prior to his coming into possession. In such case, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate or estates for years." (Emphasis supplied.)

Grossman and Smith, Pa. Inheritance and Estate Tax Act discusses the applicable rule:

"§506-1 . . . 1855 . . . 1917 . . . and 1919 P. L. 521 all enlarged the remainderman's privilege to allow an election to pay tax at any time prior to his coming into actual possession, providing that the valuation date was to be the date of payment, . . . the latter three acts also expressly provided that where remainder tax was not paid until the remainderman came into possession (i.e., the date of the life tenant's death: Ashmead Est., 28 Dist. 222 (O.C. Phila. 1919); French Est., 13 Wash. 46 (1931)), the valuation would be as of that date without deduction for prior estates."

"§506-2. 1961 Law. 1961 §506 continues the prior rule of valuing remainders on the date they take effect in possession and enjoyment which clearly means the date of the termination of the prior estate (e.g., the date of a life beneficiary's death) without

deduction for the then-expired prior estates. See Carver Est., 422 Pa. 609 (1966)."

Thus, the valuation date for the shares of the Armstrong Cork Company stock must be, as required under section 3 of the 1919 Act, the date the right of possession and enjoyment vested in the remainder estate, that is, the date of death of the life tenant under the Mary Dodge testamentary trust. This valuation is fixed at 42¾ per share.

*And now,* March 21, 1974, the Court directs the Register of Wills of Lancaster County to present his bill for inheritance tax due by the various Mennonite Churches as more fully described in Article 4, paragraph 2 of the irrevocable *inter vivos* trust agreement executed by Ross Alexander, also known as Ross C. Alexander, on April 17, 1954, in accordance with the terms and provisions of this opinion.